**KING & SPALDING LLP**
Alexander Calfo (SBN 152891)
acalfo@kslaw.com
Keri E. Borders (SBN 194015)
kborders@kslaw.com
Rebecca B. Johns (SBN 293989)
rjohns@kslaw.com
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: +1 213 443 4355
Facsimile: +1 213 443 4310

Attorneys for Defendants
TOYOTA INDUSTRIES CORPORATION,
TOYOTA MATERIAL HANDLING, INC. AND
TOYOTA MATERIAL HANDLING, N.A.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADMOOR LUMBER & PLYWOOD CO., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>TOYOTA INDUSTRIES CORPORATION,<br>TOYOTA MATERIAL HANDLING N.A.,<br>TOYOTA MATERIAL HANDLING, INC.,<br>and TOYOTA MOTOR CORPORATION,<br><br>                    Defendant. | Case No. 3:24-cv-06640-JSC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF**<br><br>Date: April 24, 2025<br>Time: 10:00 a.m.<br>Courtroom 8 – 19th Floor |

King & Spalding LLP
Attorneys at Law
Los Angeles

MOTION TO DISMISS                                            Case No. 3:24-CV-06640-JSC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on April 24, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8, 19th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jacqueline Scott Corley, defendants Toyota Industries Corporation, Toyota Material Handling N.A., and Toyota Material Handling, Inc. ("Defendants"), will and hereby do move the Court for an order dismissing the Amended Class Action Complaint, and each claim contained therein, with prejudice.

This motion is made pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6), and is based on the following grounds:

1.      Plaintiffs' claims are expressly preempted;

2.      Plaintiffs fail to state a claim for fraudulent concealment and violation of consumer protection statutes;

3.      Plaintiffs lack Article III standing to pursue their claims, including seeking injunctive relief;

4.      Plaintiffs fail to state a claim for breach of express and implied warranty;

5.      Plaintiffs fail to state a claim for unjust enrichment; and

6.      Plaintiffs fail to state a claim for violation of the Song Beverly Act.

The motion is supported by this notice, the attached memorandum of points and authorities, pleadings, and documents on file in this case, and on such other written and oral arguments as may be presented to the Court on this matter.

Dated: January 31, 2025

KING & SPALDING LLP

By: /s/ *Keri E. Borders*
    Alexander Calfo
    Keri E. Borders
    Rebecca B. Johns

*Attorney for Defendants*
TOYOTA INDUSTRIES CORPORATION,
TOYOTA MATERIAL HANDLING, INC. AND
TOYOTA MATERIAL HANDLING, N.A.

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS                                          Case No. 3:24-CV-06640-JSC

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 2

       A.    The Parties And The Challenged Forklifts............................................... 2

       B.    Federal Regulation Of Vehicle Emissions ............................................... 3

       C.    Plaintiffs' Allegations Regarding Class Vehicle Emissions Compliance............... 4

       D.    The Alleged Misrepresentations and Omissions....................................... 5

III.   LEGAL STANDARD ........................................................................................... 6

IV.    ARGUMENT ........................................................................................................ 6

       A.    Plaintiffs' Claims Are Expressly Preempted............................................. 6

       B.    Plaintiffs Lack Article III Standing........................................................... 9

             1.    Plaintiffs Do Not Plausibly Allege An Economic Injury........................... 10

             2.    Plaintiffs Lack Standing To Sue For Injunctive Relief............................. 11

       C.    Plaintiffs Do Not Plausibly Allege Fraudulent Concealment ............................. 11

             1.    No Actionable Misrepresentation Or Omission......................................... 12

             2.    No Duty To Disclose.................................................................................. 15

             3.    No Causation Or Reliance.......................................................................... 16

       D.    Plaintiffs' Claims For Violation Of State Consumer Protection Statutes Fail....... 18

       E.    Plaintiffs' Breach Of Warranty Claims Fail.............................................. 19

             1.    Basic Truck and Powertrain Express Warranty Claims............................. 19

             2.    FECW/California Emissions Warranty Claims ........................................... 21

       F.    Plaintiffs' Breach of Implied Warranty Claims Fail .................................. 21

       G.    Plaintiffs' Unjust Enrichment Claims Fail.................................................. 22

       H.    The California Specific Claims Should Also Be Dismissed................................. 24

V.     CONCLUSION ...................................................................................................... 25

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS                                              Case No. 3:24-CV-06640-JSC

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Actimmune Mktg. Litig.*,
2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .......................................................................... 11

*Ahern v. Apple, Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................................................................. 19

*Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*,
998 F. Supp. 10 (D. Mass. 1997) ............................................................................................ 7

*Amin v. Mercedes-Benz USA, LLC*,
301 F. Supp. 3d 1277 (N.D. Ga. 2018) ................................................................................. 20

*Arnett v. Seaside Transp. Servs.*,
2014 WL 117325 (N.D. Cal. Jan. 13, 2014) ......................................................................... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 6

*Barber v. Nestlé USA, Inc.*,
154 F. Supp. 3d 954 (C.D. Cal. 2015) .................................................................................. 13

*Beasley v. Lucky Stores, Inc.*,
400 F. Supp. 3d 942 (N.D. Cal. 2019) .................................................................................. 18

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .............................................................................................. 12

*Benipayo v. Volkswagen Grp. of Am., Inc.*,
2020 WL 553884 (N.D. Cal. 2020) ...................................................................................... 22

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ......................................................................................... 17

*Counts v. Gen. Motors, LLC*,
237 F. Supp. 3d 572 (E.D. Mich. 2017) ...................................................................... 9, 13, 14

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .............................................................................................. 12

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) .................................................................................. 11

*Callen v. Daimler AG*,
2020 WL 10090879 (N.D. Ga. June 17, 2020) ................................................................. 22, 23

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS                                    Case No. 3:24-CV-06640-JSC

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016) ................................................................... 22

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
   2015 WL 4591236 (D.N.J. July 29, 2015) ..................................................... 8, 21, 22

*Cheslow v. Ghirardelli Chocolate Co.*,
   445 F. Supp. 3d 8 (N.D. Cal. 2020) ..................................................................... 17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................... 7, 9, 21

*Cipollone* v. *Liggett Grp., Inc.*,
   505 U.S. 504 (1992) ............................................................................................. 7

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................ 11

*Coba v. Ford Motor Co.*,
   932 F.3d 114 (3d Cir. 2019) .............................................................................. 20

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ....................................................................... 20

*Cummings v. FCA US LLC*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019) ............................................................... 20

*DaimlerChrysler Corp. v. Morrow*,
   895 So. 2d 861 (Ala. 2004) ............................................................................... 22

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................. 11

*Devane v. L'Oreal, USA Inc.*,
   2020 WL 5518484 (S.D.N.Y. Sept. 14, 2020) ................................................... 19

*Dipito LLC v. Siderman*,
   2022 WL 3205205 (S.D. Cal. Apr. 18, 2022) .................................................... 24

*Dorfman v. Nutramax Lab'ys., Inc.*,
   2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ................................................... 17

*In re Duramax Diesel Litig.*,
   298 F. Supp. 3d 1037 (E.D. Mich. 2018) ............................................................ 9

*Emery v. Visa Int'l Serv. Ass'n.*,
   95 Cal. App. 4th 952 (2002) .............................................................................. 17

*Engine Mfrs. Ass'n v. U.S. E.P.A.*,
   88 F.3d 1075 (D.C. Cir. 1996) ............................................................................. 3

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

MOTION TO DISMISS THE COMPLAINT                                    Case No. 3:24-CV-06640-JSC

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................................. 11

*In re Ford Motor Co. Sec. Litig. Class Action*,
    381 F.3d 563 (6th Cir. 2004)................................................................................. 18

*Freeman v. Toyota Motor Sales, USA, Inc.*,
    2020 WL 7041810 (E.D. Mo. Nov. 30, 2020) ....................................................... 20

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
    771 F.3d 1119 (9th Cir. 2014)............................................................................... 11

*Garlough v. FCA US LLC*,
    2021 WL 4033177 (E.D. Cal. Sept. 3, 2021)......................................................... 15

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
    393 F. Supp. 3d 871 (N.D. Cal. 2019) ................................................................... 18

*Gerstle v. Am. Honda Motor Co., Inc.*,
    2017 WL 2797810 (N.D. Cal. June 28, 2017) ....................................................... 23

*Grausz v. Hershey Co.*,
    691 F. Supp. 3d 1178 (S.D. Cal. 2023) ................................................................. 15

*Great Pac. Sec. v. Barclays Cap., Inc.*,
    743 F. App'x 780 (9th Cir. 2018) .......................................................................... 16

*Grossman v. GEICO Cas. Co.*,
    2022 WL 1656593 (2d Cir. May 25, 2022) ........................................................... 17

*Haag v. Hyundai Motor Am.*,
    294 F. Supp. 3d 102 (W.D.N.Y. 2018) .................................................................. 20

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................. 15

*Harris v. Pfizer, Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022).................................................................... 12

*Herbst v. Deere & Co.*,
    2021 WL 5567379 (S.D. Tex. Nov. 29, 2021)....................................................... 22

*California ex rel. Heryford v. Alliance Data Sys. Corp.*,
    2018 WL 3197856 (E.D. Cal. June 26, 2018)........................................................ 15

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018).................................................................................. 19

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)................................................................................................. 8

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

MOTION TO DISMISS THE COMPLAINT                                     Case No. 3:24-CV-06640-JSC

*Jackson v. Gen. Motors*,
  770 F. Supp. 2d 570 (S.D.N.Y. 2011) ........................................................................................ 7

*Kane v. Chobani, Inc.*,
  2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ......................................................................... 17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................................... 12, 18

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ....................................................................................... 23

*Lassen v. Nissan N. Am., Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016) ..................................................................................... 10

*Lizama v. H&M Hennes & Mauritz LP*,
  2023 WL 3433957 (E.D. Mo. May 12, 2023) ........................................................................... 13

*Long v. Graco Children's Prods., Inc.*,
  2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) .......................................................................... 17

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................................. 10

*Luppino v. Mercedes-Benz USA, LLC*,
  2013 WL 6047556 (D.N.J. Nov. 12, 2013) ............................................................................... 19

*M&M Consulting Group, LLC v. JP Morgan Bank, N.A.*,
  2021 WL 71436 (C.D. Cal. Jan. 6, 2021) ................................................................................. 23

*Mallory v. McCarthy & Holthus, LLP*,
  2015 WL 2185413 (D. Nev. May 11, 2015) .............................................................................. 19

*Meaunrit v. ConAgra Foods Inc.*,
  2010 WL 2867393 (N.D. Cal. July 20, 2010) ............................................................................. 7

*Milman v. FCA US LLC*,
  2019 WL 3334612 (C.D. Cal. Apr. 15, 2019) ........................................................................... 24

*Mitchell v. Gen. Motors LLC*,
  2014 WL 1319519 (W.D. Ky. Mar. 31, 2014) .......................................................................... 23

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ....................................................................................................... 12

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .................................................................................................................... 7

*Myers v. Starbucks Corp.*,
  2020 WL 13302437 (C.D. Cal. July 29, 2020) ......................................................................... 13

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                                    Case No. 3:24-CV-06640-JSC

*Oestreicher v. Alienware Corp.*,
　544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................. 13

*Opperman v. Path, Inc.*,
　84 F. Supp. 3d 962 (N.D. Cal. 2015) .................................................................................. 16

*Pinon v. Daimler AG*,
　2019 WL 11648560 (N.D. Ga. Nov. 4, 2019) ............................................................... 22, 23

*Rasmussen* v. *Apple Inc.*,
　27 F. Supp. 3d 1027 (N.D. Cal. 2014) ................................................................................ 18

*Robie v. Trader Joe's Co.*,
　2021 WL 2548960 (N.D. Cal. June 14, 2021) ..................................................................... 23

*Robinson v. Kia Motors Am., Inc.*,
　2015 WL 5334739 (D.N.J. Sept. 11, 2015) ......................................................................... 20

*Ruiz v. Darigold, Inc./Nw. Dairy Ass'n*,
　2014 WL 5599989 (W.D. Wash. Nov. 3, 2014) ................................................................... 13

*San Diego Cty. Gun Rights Comm*. v. *Reno*,
　98 F.3d 1121 (9th Cir. 1996)................................................................................................ 10

*Schellenbach v. GoDaddy.com, LLC*,
　321 F.R.D. 613 (D. Ariz. 2017) .......................................................................................... 19

*Schmier v. U.S. Court of Appeals for the Ninth Circuit*,
　279 F.3d 817 (9th Cir. 2002)................................................................................................ 10

*Sharma v. Volkswagen AG*,
　524 F. Supp. 3d 891 (N.D. Cal. 2021) ................................................................................ 24

*Sheris v. Nissan N. Am. Inc.*,
　2008 WL 2354908 (D.N.J. June 3, 2008) ............................................................................ 22

*Shu v. Toyota Motor Sales USA, Inc.*,
　669 F. Supp. 3d 888 (N.D. Cal. 2023) ................................................................................ 17

*Sibrian v. Cento Fine Foods, Inc.*,
　2020 WL 3618953 (E.D.N.Y. July 2, 2020) ........................................................................ 12

*Sivilli v. Wright Med. Tech., Inc.*,
　2019 WL 3803808 (S.D. Cal. Aug. 13, 2019) ..................................................................... 24

*In re Sling Media Slingbox Advert. Litig.*,
　202 F. Supp. 3d 352 (S.D.N.Y. 2016).................................................................................. 19

*Smith v. Ford Motor Co.*,
　749 F. Supp. 2d 980 (N.D. Cal. 2010) ................................................................................ 19

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

MOTION TO DISMISS THE COMPLAINT                                    Case No. 3:24-CV-06640-JSC

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ............................................................................................ 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................................ 10

*Stevenson v. Mazda Motor of Am., Inc.*,
2015 WL 3487756 (D.N.J. June 2, 2015) ............................................................................ 17

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ............................................................................................ 11

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................................................ 11

*In re Takata Airbag Prods. Liab. Litig.*,
2016 WL 6072406 (S.D. Fla. Oct. 14, 2016) ...................................................................... 24

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) .............................................................................................. 19

*In re Toyota Motor Corp. Hybrid Brake Mktg, Sales Pracs. & Prods. Liab. Litig.*,
915 F. Supp. 2d 1151 (C.D. Cal. 2013) .............................................................................. 10

*Treuhaft v. Mercedes-Benz USA, LLC*,
2021 WL 2864877 (C.D .Cal. July 6, 2021) ........................................................................ 17

*Troup v. Toyota Motor Corp.*,
545 F. App'x 668 (9th Cir. 2013) .................................................................................. 20, 22

*Tull Bros., Inc. v. Peerless Prods., Inc.*,
953 F. Supp. 2d 1245 (S.D. Ala. 2013) .............................................................................. 20

*Tyrnauer v. Ben & Jerry's Homemade, Inc.*,
-- F. Supp. 3d --, 2024 WL 3346840 (D. Vt. July 8, 2024) ................................................ 13

*Udo v. Wells Fargo Bank, N.A.*,
2023 WL 8600791 (N.D. Cal. Dec. 12, 2023) .................................................................... 23

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .............................................................................................. 19

*Vess v. Ciba-Geigy, Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ...................................................................................... 12, 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 4581340 (N.D. Cal. Sept. 20, 2019) .................................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
264 F. Supp. 3d 1040 (N.D. Cal. 2017) ................................................................................ 7

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

vii

MOTION TO DISMISS THE COMPLAINT                                    Case No. 3:24-CV-06640-JSC

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig,*
  349 F. Supp. 3d. 881 (N.D. Cal. 2018) ................................................................. 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
  959 F.3d 1201 (9th Cir. 2020)............................................................................. 8

*Weaver v. Chrysler Corp.,*
  172 F.R.D. 96 (S.D.N.Y. 1997) ......................................................................... 15

*Wen v. Greenpoint Mortg. Funding, Inc.,*
  2021 WL 5449048 (N.D. Cal. Nov. 22, 2021)................................................... 23

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008)............................................................................. 18

*Wiseberg v. Toyota Motor Corp.,*
  2012 WL 1108542 (D.N.J. Mar. 30, 2012) ....................................................... 23

*Yastrab v. Apple Inc.,*
  173 F. Supp. 3d 972 (N.D. Cal. 2016) .............................................................. 16

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,*
  601 F. Supp. 3d 625 (C.D. Cal. Feb. 9, 2022) .................................................. 19

**Statutes**

42 U.S.C. § 7521 ..................................................................................................... 3

42 U.S.C. § 7522(a)(1) ............................................................................................ 3

42 U.S.C. § 7541(b) ................................................................................................ 3

42 U.S.C. § 7543 ..................................................................................................... 7

42 U.S.C. § 7543(a) ................................................................................................ 3

42 U.S.C. § 7401 *et seq.*......................................................................................... 3

Cal. Civ. Code § 1791(a) ...................................................................................... 24

Cal. Code. Regs. 13 § 2425, 2435......................................................................... 21

N.J. Stat. Ann § 56:8-2........................................................................................... 19

**Other Authorities**

40 C.F.R. § 86.001-21(b)(1)(i)(C) ......................................................................... 3

40 C.F.R. § 86.007-11............................................................................................. 3

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

40 C.F.R. § 86.007-21(p)(1) ................................................................................. 3

40 C.F.R. § 86.010-2 ............................................................................................ 3

40 C.F.R. § 86.094-21 .......................................................................................... 3

40 C.F.R. § 1036.205(i) ........................................................................................ 3

40 C.F.R. § 1068.501(a)(1)(i) ............................................................................... 3

40 C.F.R. §§ 7523 ................................................................................................. 3

40 C.F.R. §§ 7524 ................................................................................................. 3

40 C.F.R. §§ 7525 ................................................................................................. 3

40 C.F.R. § 7541 .................................................................................................. 3

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

ix

MOTION TO DISMISS THE COMPLAINT                                    Case No. 3:24-CV-06640-JSC

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Are Plaintiffs' claims expressly preempted?

2.  Do Plaintiffs fail to state a claim for fraudulent concealment and violation of consumer protection statutes?

3.  Do Plaintiffs lack Article III standing to pursue their claims, including seeking injunctive relief?

4.  Do Plaintiffs fail to state a claim for breach of express and implied warranty?

5.  Do Plaintiffs fail to state a claim for unjust enrichment?

6.  Do Plaintiffs fail to state a claim for violation of the Song Beverly Act?

## I.   INTRODUCTION

Plaintiffs are businesses, including landscaping companies, nurseries, construction companies, and manufacturers, who purchased liquid propane gas ("LPG"), gasoline, and diesel-powered forklifts manufactured by Toyota Material Handling, Inc.[1] ("TMH") that were equipped with engines that were manufactured and imported by Toyota Industries Corporation ("TICO"). In 2023, TICO announced that it was suspending importation of certain TICO-manufactured internal combustion engines into the United States and convened a Special Investigation Committee ("SIC") in Japan. The SIC was convened to audit TICO's internal processes and issue a report relating to compliance with Japanese emissions standards. The SIC issued a report on January 29, 2024 (the "SIC Report") and following the issuance of that report in Japan, this lawsuit was filed.

The gravamen of the Amended Complaint ("AC") is that certain TMH-branded forklifts do not comply with U.S. emissions standards and, therefore, Plaintiffs have been injured in the form of a price premium that they allegedly paid for a forklift with an internal combustion engine that complied with U.S. emissions standards. Not only are Plaintiffs' claims preempted because they are not entitled to enforce the Clean Air Act ("CAA") or other emissions regulations promulgated by the Environmental Protection Agency ("EPA"), but the AC contains no plausible factual

---

[1] On January 1, 2020, Toyota Industrial Equipment Mfg., Inc. ("TIEM") merged with Toyota Material Handling U.S.A., Inc. ("TMHU") to create TMH. Prior to that time, the forklifts were manufactured by TIEM.

1

MOTION TO DISMISS                                         Case No. 3:24-CV-06640-JSC

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

allegations that any forklift purchased by the Plaintiffs did not comply with U.S. emissions standards, much less that any of the Plaintiffs were injured by the alleged failure to comply. Plaintiffs attempt to evade preemption with vague allegations that unidentified representations were made to them about the "emissions" and "sustainability" of the forklifts and that those representations were false because the forklifts allegedly failed to meet Plaintiffs' "reasonable expectations" for emissions. But these vague allegations are insufficient to state a fraudulent concealment or state consumer deception law claim because Plaintiffs have not (and cannot) identified any material representations made to them that were allegedly false. The AC contains supposition and hyperbole and is based on "information and belief" – none of which is sufficient to state a claim for fraudulent concealment, breach of express and implied warranty, or violation of consumer protection laws. Accordingly, the motion to dismiss should be granted with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Parties And The Challenged Forklifts

TICO is a Japanese corporation that designs and manufactures internal combustion engines that are used in forklifts and construction equipment. AC ¶ 39. TMH manufactures and assembles a variety of Toyota-branded forklifts, including forklifts that are powered by both electric engines and internal combustion engines (LPG, gasoline, and diesel), that are sold in the United States. through authorized dealerships. AC ¶ 45.

Plaintiffs are twenty-two (22) businesses located in seventeen (17) states. AC ¶¶ 1, 17-38. Although no specific details regarding Plaintiffs' individual purchases (when purchased, model year) are included in the AC, twenty (20) Plaintiffs alleged that they purchased a forklift powered by the 4Y LSI engine (either LPG, gasoline, or LPG/gasoline), which include the Core IC Cushion Forklift (Model Nos. 8FGCUxx) and the Core IC Pneumatic Forklift (Model Nos. 8FGUxx).[2] AC ¶¶ 17-34, 36-38. Four Plaintiffs alleged that they purchased forklifts powered by diesel engines (Model Nos. 8FDUxx and 8FDxxU). AC ¶¶ 35-37. No Plaintiff alleges to have purchased a forklift with an electric engine.

---

[2] The xx in the Model Number refers to the chassis capacity of the forklift. The chassis capacity for the 4Y can vary from 3,000-6,000 pounds. The chassis capacity of certain diesel models (1KD) can be as high as 15,000 pounds.

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

### B.    Federal Regulation Of Vehicle Emissions

New vehicle engines—including the engines that power the forklifts at issue in this case—are subject to extensive regulation by EPA under the CAA, 42 U.S.C. § 7401 *et seq*. The CAA and EPA's regulations establish federal emissions standards for new vehicle engines. 42 U.S.C. § 7521; 40 C.F.R. § 86.007-11. EPA's standards apply not only to the engine, but also to a vehicle's broader emissions control system and other technology designed to monitor or control emissions. *See* 40 C.F.R. § 86.010-2; *id*. § 86.094-21; *id*. § 1068.501(a)(1)(i). EPA has also promulgated extensive regulations that set out the testing procedures that manufacturers must follow to determine whether engines comply with these federal emissions standards. *See, e.g.,* 42 U.S.C. § 7541(b); 40 C.F.R. Part 1065; 40 C.F.R. Part 1066.

Before any engine can be sold in the United States, the manufacturer must obtain a certification from EPA that the engine complies with applicable emissions standards. See 42 U.S.C. § 7522(a)(1). To obtain a certification, manufacturers must submit detailed emissions test results and other information to EPA. 40 C.F.R. § 86.094-21(b). Manufacturers must also certify that they have complied with the EPA's testing requirements and that the test results satisfy EPA's emissions standards. *See id*.; *id*. § 86.001-21(b)(1)(i)(C); *id*. § 86.007-21(p)(1); *id*. § 1036.205(i).

The CAA reflects Congress's intention to give the federal government exclusive authority to set and enforce federal emissions standards. The EPA has broad authority to establish emissions standards, 42 U.S.C. § 7521(a)(l), and to test and monitor manufacturers' compliance with those standards, *id*. §§ 7525, 7541(b). The EPA also has expansive authority to enforce compliance with those standards, including by forcing recalls of engines that do not meet emissions standards, *id*. § 7541(c)(1), and to impose penalties for violations of those standards, *id*. §§ 7523, 7524.

To avoid "the possibility of 50 different state regulatory regimes rais[ing] the spectre of an anarchic patchwork of federal and state regulatory programs," *Engine Mfrs. Ass'n v. U.S. E.P.A.*, 88 F.3d 1075, 1079 (D.C. Cir. 1996) (internal quotations omitted), the CAA contains a broad preemption provision that states: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a).

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

### C.    Plaintiffs' Allegations Regarding Class Vehicle Emissions Compliance

Plaintiffs allege, based on the SIC Report, that TICO engaged in misconduct relating to its reporting of its emissions testing to regulatory agencies and that this alleged misconduct had the "net effect"' of the Class Vehicles (with LPG, gasoline, and diesel engines) emitting more pollutants than allowed by law. *See* AC ¶¶ 7, 78-86. Specifically, Plaintiffs allege that the investigation conducted by the SIC discovered that in connection with the required compliance emissions testing for the Class Vehicles, TICO engaged in one or more of the following types of misconduct: used values that were different from the measure values; modified software so that the engines performed differently in the certification tests; replaced engine parts during testing; and used different engines in testing than were in the production-model vehicles. AC ¶¶ 5-6.

Plaintiffs further allege that the SIC Report indicates that re-testing conducted in connection with its investigation concluded that (i) the diesel engines (the 1KD and 1ZS) had NOx (nitrogen oxides) emissions that "exceeded [Japanese] domestic regulation values," but that (ii) the re-testing indicated that the gasoline/LPG engines (the 4Y and the 1FS) *did not* exceed regulatory limits. AC ¶ 87. Even though the factual allegations in the AC are reliant on the SIC Report, Plaintiffs contend that the results of the re-testing of the gasoline/LPG engines should be discounted and ignored. Instead, without any factual basis, they assert "on information and belief" that the emissions from the gasoline/LPG engines (4Y and 1FS) exceeded regulatory limits. AC ¶ 89. But there is no factual basis presented anywhere in the AC to support the conclusion that the emissions from any Class Vehicle violates the CAA or any other regulatory standard.

Moreover, although the SIC Report relates to compliance with testing of engines for compliance with Japanese emissions standards, Plaintiffs contend that Japanese and U.S. emissions standards are similar (AC ¶¶ 95-97) and, therefore, the alleged misconduct highlighted in the SIC Report is equally applicable to engines certified to be sold in the U.S. and demonstrates a failure to comply with U.S. emissions standards. AC ¶ 100. Thus, according to Plaintiffs, Defendants "cheated on its tests and then lied about it both to the regulators and consumers." AC ¶ 111. As a result, Plaintiffs allege that the engine certifications attesting to compliance with the CAA were fraudulently obtained and, therefore, the forklifts purchased by Plaintiffs do not comply with the

U.S. emissions standards because they emit (unidentified) pollutants in amounts (unidentified) that exceed regulatory limits. AC ¶ 89. The AC, however, contains no facts demonstrating that any regulatory agency has taken final action against Defendants or that that there has been a finding by any regulatory agency that the Class Vehicles emit excess emissions in violation of the CAA.

**D.      The Alleged Misrepresentations and Omissions**

The bulk of the AC relates to alleged misrepresentations and misconduct in connection with the required regulatory testing and submissions to EPA in connection with obtaining certifying engines under the CAA. Accordingly, at best for Plaintiffs, the gravamen of the AC is that Defendants made misrepresentations to EPA in connection with their regulatory submissions.

With regards to alleged misrepresentations to consumers, Plaintiffs allege that Defendants:

- Made general statements about sustainability and the environment, including the existence of a corporate sustainability report (*see, e.g.*, AC ¶¶ 102; 105; 107(d), (e), (g); 108(a); 109(a)-(d));

- Represented that the Class Vehicles complied with emissions regulations (*see, e.g.*, AC ¶¶ 107(c), (d), (f); 108 (b)-(d), (f)-(h));

- Made general comparative statements about the Class Vehicles and their attributes (*see, e.g.*, AC ¶¶ 107 (c), (g); 108 (d)-(f), (h)-(j)).

Notably no named Plaintiff alleges that it relied on any of these, or any other, advertisement in making the decision to purchase a Class Vehicle. Indeed, Plaintiffs do not even allege when they purchased their vehicles or the vehicles' model year. No named Plaintiff alleges that it visited TMH's website or viewed its blogposts. No named Plaintiff alleges that it ever reviewed, or even knew about, the Sustainability Reports. No named Plaintiff alleges that it bought a Class Vehicle because of specific or individual concerns about the environment, or because of advertisements about emissions compliance. This is unsurprising, given that the marketing materials Plaintiffs reference in the Complaint do not depict a nationwide, consumer-focused advertising campaign that had emissions as its primary focus. Indeed, Plaintiffs affirmatively chose to purchase a forklift with an internal combustion engine that, by definition, has emissions, as opposed to an electric

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

5

forklift that does not. Finally, the AC never explains why the regulatory violations alleged to have occurred in connection with submissions to EPA render these advertising materials misleading.

Regarding their alleged economic injury, Plaintiffs allege that they purchased their forklifts based on "representations and/or omissions regarding their cleanliness, emissions output, performance, and sustainability" and that they were under the "reasonable expectation . . . that they met or exceeded all regulatory emissions standards." *See* AC ¶¶ 17-38. Plaintiffs generally allege that had they known the forklifts had "worse emissions" than "reasonably expected," they would not have purchased the forklifts, or would have paid less for them. *Id.* No Plaintiff alleges it is unable to operate its forklift, that the forklift did not perform as expected, or that it has lost busines, or incurred any additional costs because of the alleged failure to comply with the CAA.

## III. LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. After that filtration, the court determines whether the remaining factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id*. This evaluation is necessarily "a *context-specific* task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (emphasis added). If the well-pleaded facts do not permit the court "to infer more than the mere possibility of misconduct," the complaint fails to show "that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## IV. ARGUMENT

### A. Plaintiffs' Claims Are Expressly Preempted

All of Plaintiffs' claims are preempted because they are a thinly disguised attempt to enforce the CAA, for which there is no private right of action. "Under the Supremacy Clause, state law that conflicts with federal law has no effect." *Meaunrit* v. *ConAgra Foods Inc.*, 2010 WL 2867393, at

King & Spalding LLP
Attorneys at Law
Los Angeles

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

*5 (N.D. Cal. July 20, 2010) (citing *Cipollone* v. *Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). Section 209 of the CAA is clear that: "[n]o State or any political subdivision thereof shall adopt or *attempt to enforce any standard relating to the control of emissions* from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543 (emphasis added).[3]

Section 209(a) is a "sweeping preemption provision." *Jackson v. Gen. Motors*, 770 F. Supp. 2d 570, 573 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80, 82 (2d Cir. 2012). "Section 209(a) does not just prohibit States from adopting emission standards that conflict with EPA standards; the provision instead bars States from adopt[ing] or *attempting to enforce any* standard 'within Section 209(a)'s reach.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 264 F. Supp. 3d 1040, 1050 (N.D. Cal. 2017) (emphasis in original). This includes private lawsuits under state law because they represent a quintessential method of "attempting to enforce standards" based on alleged violation of state law. *See Cipollone*, 505 U.S. at 521. Thus, "it is clear that a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA and is therefore subject to preemption."[4] *Jackson*, 770 F. Supp. 2d at 575; *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1024 (N.D. Cal. 2018) (dismissing state law warranty claims based on alleged emissions flaws in EcoDiesel engines as preempted by the CAA); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, at *13 (D.N.J. July 29, 2015) (breach of express warranty claims based on FECW preempted by CAA).

---

[3] The words "relating to" indicate "a broad pre-emptive purpose." *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (interpreting same phrase in analogous express preemption provision); *Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*, 998 F. Supp. 10, 17 (D. Mass. 1997) (Congress "intended to provide § 209(a) with a broad preemptive scope.").

[4] "By barring State enforcement of new-vehicle emission standards, both before and after the initial sale of a vehicle, Section 209(a) keeps States from interfering with EPA investigations and enforcement actions based on fraud or deceit against the Agency during the new-vehicle certification process. If States were also permitted to police such deception, there could be a multiplicity of redundant investigations and enforcement actions, 'rais[ing] the spectre of an anarchic patchwork of federal and state regulatory programs, ... [and] threaten[ing] to create nightmares for the manufacturers.'" *Volkswagen*, 264 F. Supp. 3d at 1053.

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

Plaintiffs' claims center on the allegation that the level of emissions from the Class Vehicles is unlawful under the CAA and its implementing regulations. *See, e.g.,* AC ¶¶ 5-13 (Defendants allegedly engaged in an "emissions scheme" to "misrepresent[] the vehicles' true emissions levels" during emissions regulations testing and presented false information to regulators, which allowed the Class Vehicles to receive certifications from U.S. regulatory agencies that they complied with regulatory requirements when they "emit[] more pollutants than represented, allowed by law, or reasonably expected."); 276 (same). Similarly, Plaintiffs' breach of warranty claims are unabashedly based on an alleged violation of the CAA. Significantly, Plaintiffs allege that federal regulations require "manufacturers of spark-ignition (gasoline) non-road engines and compression ignition (diesel) non-road engines to provide federal emissions control warranties applicable to each category," and that Defendants breached these warranties. *See, e.g.,* AC ¶¶ 201-207; 248-253; 301-307; 387-392; 450-455.

Accordingly, Plaintiffs' state law claims have an impermissible "reference to" the preempted subject matter—control of vehicle emissions under the CAA—where the preempted subject matter "is a critical factor in establishing liability" for Plaintiffs' state law claims. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990). Here, Plaintiffs' state law claims are completely dependent whether the Class Vehicles comply with the CAA and they would not have any claim (under any theory) if the Class Vehicles did not have emission levels that exceed federal regulations. Accordingly, to prevail on their claims, Plaintiffs will "need to attempt to prove that those [federal emissions] standards were violated." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*, 349 F. Supp. 3d. 881, 911 (N.D. Cal. 2018); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1206-07 (9th Cir. 2020).

For that reason, Plaintiffs' claims plainly bear a "connection with" or "reference to" the control of emissions from the Class Vehicles, and making compliance with emissions controls a "critical factor in establishing liability." *Ingersoll-Rand*, 498 U.S. at 139-40. Plaintiffs point to no other deceptive acts, other than the specific testing required by CAA regulations and the information provided to regulatory agencies in connection with obtaining certification for the engines under the requirements of the CAA. Attempting to avoid preemption, the AC also asserts

8

that, in addition to failure to comply with the CAA, the emissions from the Class Vehicles exceed what was reasonably expected. AC ¶¶ 7, 17-38, 148. Plaintiffs fail to identify their "reasonable expectation" for emissions for their gasoline, LPG, and diesel-powered forklifts, other than the alleged failure to comply with the CAA. Regardless, Plaintiffs are not entitled to enforce their idiosyncratic specific expectations for emissions and invent their own emissions standards. Because Plaintiffs seek to impose liability on Defendants for failing to comply with CAA emissions standards, their claims are expressly preempted under Section 209(a).

Plaintiffs will undoubtably argue their claims do *not* solely rely on the CAA and enforcement of regulatory standards, but instead the AC alleges that certain advertising statements were deceptive because the engines failed to meet other "reasonably expected" standards, separate from the CAA. As discussed more fully below, these allegations do not hold water. The AC does not identify a widely disseminated or pervasive marketing campaign regarding the emissions of the gasoline or LPG-powered forklifts, much less the few diesel-powered forklifts at issue in this case. Unlike in other emissions cases, the forklifts were not marketed as "EcoDiesel" or "Clean Diesel" and there are no allegations that the forklifts contained a defeat device that was undisclosed to Plaintiffs at the time of purchase. *See, c.f., Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 591-92 (E.D. Mich. 2017) (claims based on vehicles marketed as "Clean Diesel" based on cutting edge "Cruze Clean Turbo Diesel" technology were not preempted); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prods. Liab. Litig.,* 295 F. Supp. 3d at 992-994 (misrepresentation claim based on branding trucks with "EcoDiesel" logo was not preempted); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1060-64 (E.D. Mich. 2018) (claims based on failure to disclose a defeat device in an engine marketed as "clean diesel" was not preempted).

### B.    Plaintiffs Lack Article III Standing

The AC should be dismissed for lack of Article III standing because Plaintiffs fail to plausibly allege an injury in fact. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). "As the parties invoking federal jurisdiction, plaintiffs bear the burden of establishing their standing to sue." *San Diego Cty. Gun Rights Comm*. v. *Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citing *Lujan*,

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

504 U.S. at 561). For a plaintiff to have standing, she must demonstrate (1) an injury in fact, (2) causation, and (3) redressability. *Lujan*, 504 U.S. at 560-61. A complaint "must 'clearly ... allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish an injury in fact, a plaintiff must allege that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan*, 504 U.S. at 560) (citation omitted). Such an injury "must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standing calculus." *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). The injury also must be "fairly trace[able] . . . to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (alteration in original).

### 1.    Plaintiffs Do Not Plausibly Allege An Economic Injury

Plaintiffs fail to plead a "concrete" injury-in-fact that is fairly traceable to the alleged, but unproven, regulatory violations because their purported injuries are entirely speculative or nonactionable. A bare regulatory violation is insufficient to demonstrate standing. *Spokeo,* 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Moreover, Plaintiffs' assertion that they "overpaid" in an undetermined amount for the Class Vehicles is too speculative to confer standing. Plaintiffs do not identify any actual defect with their forklifts. There are no allegations that they are not operating as promised or that there have been any mechanical or any other manufacturing defects with the forklifts. Plaintiffs have not plausibly alleged that their vehicles emit excess emissions or are not in compliance with applicable government regulations. *See supra* at 15. Accordingly, they have no "legally recognizable claim where the alleged defect has not manifested itself in the product they own." *In re Toyota Motor Corp. Hybrid Brake Mktg, Sales Pracs. & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1155-56 (C.D. Cal. 2013). Therefore, Plaintiffs' conclusory allegation of "overpayment" does not qualify as an injury-in-fact because it is "purely theoretical." *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1283 (C.D. Cal. 2016); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 967-68 (N.D. Cal. 2015) ("Judges in this District regularly deny standing in product liability cases where there has been no actual injury and the injury in fact theory rests only on an unproven risk of future

10

harm."); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) (dismissing for lack of standing where "Plaintiffs have not alleged an actual economic injury because they have not had any negative experience with the [vehicles]").

### 2. Plaintiffs Lack Standing To Sue For Injunctive Relief

To satisfy Article III's case-or-controversy requirement, a plaintiff who requests injunctive relief must allege facts showing he or she likely will suffer imminent and irreparable injury in the future without an injunction. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-72 (9th Cir. 2018); *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087-88 (9th Cir. 2020) (holding *Davidson* requires a plaintiff to plausibly allege a desire to purchase the product in the future). A plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way," but cannot do so. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiffs now have access to the SIC and the facts underlying the lawsuit and cannot be deceived by the same allegedly deceptive advertising. Moreover, they have not alleged that they wish to purchase more forklifts in the future, and accordingly, their claims for injunctive relief must be dismissed.

### C. Plaintiffs Do Not Plausibly Allege Fraudulent Concealment

Even if Plaintiffs' claims are not preempted, the AC fails to state a plausible fraudulent concealment claim under California law.[5] To plead fraudulent concealment, Plaintiffs must allege, with particularity: (i) a misrepresentation or omission of material fact; (ii) a duty to disclose; (iii) scienter; (iv) intent to defraud; (v) justifiable reliance; and (vi) damage. *See Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1131 (9th Cir. 2014); *Vess v. Ciba-Geigy, Corp. USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003). The AC fails to plausibly allege these elements with particularity. *See, e.g.*, AC ¶¶ 101-111; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th

---

[5] Plaintiffs allege this Nationwide claim under California law, or in the alternative, under the laws of all fifty states and Puerto Rico. AC ¶ 145. For the purposes of this motion, Defendants analyze this claim under California law. Plaintiffs make no other specific allegations to comply with the laws of other states, and, indeed, Plaintiffs do not have standing to bring claims on behalf of citizens of other states. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (where "a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal."); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (dismissing state claims without a representative plaintiff).

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                                     Case No. 3:24-CV-06640-JSC

Cir. 2009) (claims sounding in fraud are required to be pled with particularity under Rule 9(b)); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

### 1.     No Actionable Misrepresentation Or Omission

The AC fails to plausibly allege material misrepresentations or omissions. None of the alleged misrepresentations or omissions of information to regulatory agencies is sufficient to state a claim for fraudulent concealment.

- ***Eco-branding***. Plaintiffs point to a category of statements that constitute alleged "eco-branding," which includes the existence of a corporate policy regarding sustainability and general statements regarding the environment and sustainability, such as "[s]ustainability of the environment is an important consideration for professionals in any industry. That's why Toyota has set out to meet that need with top-of-the-line, environmentally friendly products." AC ¶ 102; *see also* AC ¶¶ 105 (corporate sustainability initiatives); 107(e) (4Y is "just as good for the environment as it is for your business"); 107(g) (challenging "environmental performance" benefits); 108(a); 109(a)-(d). Plaintiffs cannot plausibly allege that Defendants do not have environmental or sustainability initiatives, do not take steps towards creating a more sustainable or better environment, and the AC fails to tie any of these statements about the environment and sustainability to specific statements made about emissions for their specific forklift. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 883-84 (9th Cir. 2021) (reasonable consumer would not adopt plaintiffs' interpretation of product label); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019) (consumer's alleged plausible misunderstanding of word "diet" insufficient to state a claim); *Sibrian v. Cento Fine Foods, Inc.*, 2020 WL 3618953, at *4 (E.D.N.Y. July 2, 2020) (plaintiff's reliance on her *own* idiosyncratic interpretation of a challenged representation did not amount to a plausibly alleged fact); *Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 243-44 (S.D.N.Y. 2022) ("A plaintiff does not have a claim . . . just because she comes away from an advertisement with an incorrect impression.").

Moreover, statements regarding corporate ethos and goals, aspirations, and values are *not* actionable as false advertising, particularly with respect to false advertising theories directed at a particular product. *See Tyrnauer v. Ben & Jerry's Homemade, Inc.*, -- F. Supp. 3d --, 2024 WL

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

3346840, at *10 (D. Vt. July 8, 2024) (plaintiffs lacked standing to sue based on their subjective belief that the challenged product was not sufficiently ethically sourced); *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *5 (C.D. Cal. July 29, 2020) ("No reasonable consumer could interpret" sustainable sourcing statement "as a promise to eliminate unethical practices from its supply chain").[6]

- ***Comparative Statements**.* Plaintiffs challenge comparative statements about the challenged engines, including that they are the "cleanest engine in the industry," and that their "emission standards rival the emission standards of any competitive internal combustion engine." AC ¶¶ 107(a); 108(a); 108(d) (1ZS "provides 'less displacement than the previous model for lower emissions and fuel costs'"), 108(e)-(h). But the AC is devoid of allegations that identify any engines that Plaintiffs allege are "cleaner," that the engines are not comparatively better than the other forklift engines, and that the engines do not rival the emissions standards of competitive internal combustion engines in forklifts.[7] In addition, vague, non-specific statements like those identified by Plaintiffs are inactionable puffery. *See, e.g., Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable[.]"). "Generalized, vague, and unspecified" statements are routinely dismissed at the 12(b)(6) stage. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008). For example, in *Counts*, the court held that GM's representations about the "high quality and 'safety' of its vehicles," including statements about the subject vehicles "more efficient combustion," "'improved 'performance,'" and "90% less emissions" were "inherently subjective" or "nonquantifiable" and therefore were inactionable puffery. 237 F. Supp. 3d at 598.

---

[6] *See also Barber v. Nestlé USA, Inc.*, 154 F. Supp. 3d 954, 962–64 (C.D. Cal. 2015) (dismissing false advertising claims based on supplier code of conduct documents); *Ruiz v. Darigold, Inc./Nw. Dairy Ass'n*, 2014 WL 5599989, at *4 (W.D. Wash. Nov. 3, 2014) (dismissing claims where advertising statements reflect nuanced assessments, are aspirational statements, or have not been shown to be false in any material respect); *Lizama v. H&M Hennes & Mauritz LP*, 2023 WL 3433957, at *5 (E.D. Mo. May 12, 2023) (general statements like "most sustainable products" would not lead a reasonable consumer to believe that the clothing line is inherently sustainable).

[7] Indeed, the AC is rife with allegations that other vehicle manufacturers have engaged in emissions and fuel economy cheating scandals. *See, e.g.*, AC ¶ 67.

King & Spalding LLP
Attorneys at Law
Los Angeles

MOTION TO DISMISS THE COMPLAINT                                     Case No. 3:24-CV-06640-JSC

- ***Emissions Compliance***. Plaintiffs allege that the 4Y engine was deceptively marketed as being emissions compliant. AC ¶¶ 107(c) (4Y is "emissions compliant"), (d) ("The 4Y engine's emissions system filters carbon monoxide, hydrocarbon, and nitrogen oxide gases, allowing it to surpass federal EPA emissions standards"), (f) (4Y is "EPA and CARB compliant"); 108(b)-(c), (e)-(h). But as discussed above, these statements are expressly preempted and cannot form the basis of a false advertising claim. Regardless, Plaintiffs' claims are also subject to dismissal because they have not plausibly alleged that the Class Vehicles powered by the 4Y engine operated in violation of U.S. emissions standards. The SIC Report, relied on by Plaintiffs, states that there is no report of excess emissions in violation of regulatory requirements for the 4Y and 1FS engines. AC ¶ 87. Plaintiffs did not conduct their own testing and the AC contains no factual allegations that demonstrate that these engines are, in fact, in violation of regulatory requirements. Accordingly, Plaintiffs have not plausibly alleged that the 4Y engine exceeded United States emissions standards.

- ***General statements about the emissions, power, and fuel consumption***. Plaintiffs challenge statements about unchallenged aspects of the Class Vehicles, such as those regarding emissions in general, power, and fuel consumption. AC ¶¶ 107(b) ("4Y: Low emission, High power, Low fuel consumption."); 107(g) (challenging statement "Ideal balance between high reliability, high performance and fuel economy, clean exhaust"); 108(e)-(j), 109-110. But again, these general claims about power and fuel consumption are irrelevant, constitute inactionable puffery, and the AC complaint contains no plausible allegations that the power or fuel consumption of the Class Vehicles was anything other than as represented.

- ***Omissions.*** Throughout the AC, Plaintiffs assert that they are challenging Defendants' "misrepresentations and omissions." *See, e.g.,* AC ¶¶ 59-60, 109. Plaintiffs, however, never specifically identify material facts that were allegedly concealed from them. Instead, Plaintiffs make the vague assertion that Defendants "conceal[ed] the true nature of the Class Vehicles' emissions and performance from the Plaintiffs," (AC ¶ 147), but cite to nothing more than the alleged statements made to regulators. AC ¶¶ 5-7. In turn, Plaintiffs allege "on information and belief" that the same types of misconduct identified in the SIC Report occurred in connection

14

with engines sold in the U.S. and, again "on information and belief," that the alleged misconduct resulted in engines that produced emissions that exceeded U.S. regulatory standards. AC ¶ 89. Those allegations, however, are entirely speculative, not based on any facts, and, therefore, fail to meet the specificity requirements of Fed. R. Civ. Proc. 9(b). *See California ex rel. Heryford v. Alliance Data Sys. Corp.*, 2018 WL 3197856, at *4 (E.D. Cal. June 26, 2018) (allegations made on "information and belief" do not generally satisfy the particularity requirement). Plaintiffs do not allege what information should have been disclosed, much less that they would have seen and relied on such information had it been disclosed. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (dismissing omissions-based fraud claim where plaintiff failed "to specifically identify the representations, advertisements, and promotional materials that omitted the [disputed information], misled him, and upon which he relied").

### 2.     No Duty To Disclose

Plaintiffs' omission-based claims require them to allege with particularity that: (i) the omission was material; and (ii) the alleged defect was central to the product's function *and* (iii) the defendant (a) is plaintiff's fiduciary; (b) has exclusive knowledge of the material facts, (c) actively conceals a material fact, or (d) makes misleading partial representations (the *Limandri* factors). *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1194-95 (S.D. Cal. 2023); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022).

"A defect affects the central function of a product when it renders the product incapable of use by any consumer." *Garlough v. FCA US LLC*, 2021 WL 4033177, at *5 (E.D. Cal. Sept. 3, 2021). "The question is not whether a defect 'affects' the product, rather the question is: does the alleged defect prevent the product from 'performing a critical or integral function,' or render the product 'incapable of use' for all users?" *Hammerling*, 615 F. Supp. 3d at 1086. Plaintiffs do not allege that their machinery did not work as intended, or that the engines caused any performance issues with their machinery, and accordingly, cannot meet the central function test and, therefore, Defendants do not have a duty to disclose.

Even if Plaintiffs could meet the central function test, they must still establish one of the four *LiMandri* factors. As Plaintiffs' claims are rooted in the alleged affirmative misrepresentations

15

made through the challenged marketing and advertising, they appear to be attempting to establish a duty to disclose based on a partial representation. To do so, Plaintiffs must identify the "who, what, when, where, and how" of that relevant representation. *In re Volkswagen "Clean Diesel" Mktg.*, *Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 4581340, at *6 (N.D. Cal. Sept. 20, 2019) (dismissing "fraud-by-omission" claim under Rule 9(b) where partial representations were not pleaded with enough particularity to support duty to disclose additional facts). That requires Plaintiffs to allege "that class members saw or heard these partial representations and were misled by them in such a way that [the defendant] should have fully disclosed related information." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015). The AC only alleges in general and conclusory fashion that Plaintiffs decided to purchase Class Vehicles based in part on general representations regarding "cleanliness, emissions output, performance, and sustainability," and/or that the vehicles "met or exceeded all regulatory emissions standards" (*see* AC ¶¶ 17-38). That is insufficient under Rule 9(b). *See Opperman*, 84 F. Supp. 3d at 984–85.

### 3.    No Causation Or Reliance

The AC does not allege causation or reliance with particularity. *See Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782-83 (9th Cir. 2018). Plaintiffs' allegations lack sufficient detail about the alleged misrepresentations that they saw and relied upon prior to their purchase. Plaintiffs aver only that they decided to purchase Class Vehicles based in part on general representations that the vehicles were clean burning, had low emissions output, were high-performance, and were sustainable, and/or that the vehicles "met or exceeded all regulatory emissions standards" (*see* AC ¶¶ 17-38), but do not identify what specific representations they reviewed and relied on in their purchasing decision. *See Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978-79 (N.D. Cal. 2016). The AC does not identify a wide-spread marketing and advertising campaign to which they were exposed to that related to the emissions of the Class Vehicles. The challenged statements were made in blog posts, trade association publications, YouTube videos, press releases, and on other websites.[8] *See e.g.*, fns. 69, 70, 76, 80, 82, and 84. Some were published

---

[8] In addition, Plaintiffs' claims based on statements made in trade association publications, on third-

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

decades ago.  *See, e.g.*, AC ¶ 109 n.90 (citing a 2006 press release on Arbor Day Foundation website). Plaintiffs never allege that they read these blogs, publications, or websites prior to purchase, much less that they relied on any of these statements. Therefore, any claims based on these various advertising statements must be dismissed. *See Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 898 (N.D. Cal. 2023) (no reliance where plaintiff did not allege that she specifically reviewed the sticker on the car); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) ("Brazil did not see the allegedly offending statements before he purchased the fruit. Dole's statements therefore cannot be said to have influenced his purchase, and he cannot state a claim that derives from this theory of misrepresentation."); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *8-9 (N.D. Cal. Sept. 19, 2013); *Grossman v. GEICO Cas. Co.*, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (Plaintiffs did not claim they reviewed allegedly misleading advertising prior to purchase and "cannot show that the allegedly misleading advertisement caused their injury"); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *8 (D.N.J. June 2, 2015) (Plaintiff failed to allege that they reviewed the challenged statements in connection with his purchase).

Finally, the alleged misstatements are the type of vague, subjective, and nonquantifiable statements that are routinely found to be inactionable puffery on which a reasonable consumer would not rely, as a matter of law. *See Long* v. *Graco Children's Prods., Inc.*, 2013 WL 4655763, at *4 (N.D. Cal. Aug. 26, 2013) (a challenged claim is non-actionable puffery if it is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely); *Treuhaft v. Mercedes-Benz USA, LLC*, 2021 WL 2864877, at *5 (C.D .Cal. July 6, 2021) (representations that vehicle had "clean diesel," was "reliable," and had a "low-emission clean diesel engine" are "clearly puffery"); *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 877 (N.D. Cal. 2019) ("broad claims of 'reliability' and 'durability'" and "references to 'superior fuel

---

party websites, or in other materials not controlled by Defendants fail because Plaintiffs do not allege that Defendants were responsible for or participated in disseminating the allegedly deceptive information. *See Emery v. Visa Int'l Serv. Ass'n.*, 95 Cal. App. 4th 952, 960 (2002); *Dorfman v. Nutramax Lab'ys., Inc.*, 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013).

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

economy,' … and 'emission performance'" were "mere sales puffery"); *In re Ford Motor Co. Sec. Litig. Class Action*, 381 F.3d 563, 571 (6th Cir. 2004) (finding the statement "extremely safe and thoroughly engineered vehicle" inactionable puffery). Statements that lack "specific or absolute characteristics," and instead "'merely stat[e] in general terms that one product is superior [are] not actionable.'" *Rasmussen* v. *Apple Inc.*, 27 F. Supp. 3d 1027, 1039, 1043 (N.D. Cal. 2014) (quoting *Cook, Perkiss & Liehe, Inc.* v. *N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).

### D.   Plaintiffs' Claims For Violation Of State Consumer Protection Statutes Fail

In addition to the common law fraudulent concealment claim, the AC also alleges claims brought pursuant to the state consumer protection statues of seventeen states based on the same allegations of misrepresentations and omissions. Plaintiffs' state consumer protection claims are insufficient for the same reasons as their fraudulent concealment claim.

First, because these claims sound in fraud, they must be pled with the required particularity under Rule 9(b). *Kearns*, 567 F.3d at 1125-27. Plaintiffs fail to do so for numerous reasons as stated throughout this motion, including because Plaintiffs do not allege when they purchased their forklift, the model year of their purchased forklift, or the mileage on the forklift at the time of purchase, and some do not allege whether they purchased a new or used forklift. All of that information is required by Rule 9(b) and will be critical to the disposition of Plaintiffs' claims, including a determination as to whether the claims are barred by the statute of limitations. *See Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 955–56 (N.D. Cal. 2019) (dismissing claims where the plaintiff did not allege specifics of his purchase and reliance). Second, Plaintiffs fail to allege the existence of an actionable misrepresentation. *Supra* at 13-16; *see also Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (whether a statement is false or misleading is assessed via the reasonable consumer standard). Third, Plaintiffs fail to plausibly allege that the disputed information about the alleged irregularities in the testing data

King & Spalding LLP
Attorneys at Law
Los Angeles

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

submitted to regulatory agencies was material and that they had a duty to disclose.[9] *Supra* at 16-17; *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (omission must be material and plaintiff must establish a duty to disclose). Finally, the AC does not adequately allege causation or reliance, as required.[10] *Supra* at 17-18; *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 764-65, 770 (C.D. Cal. Feb. 9, 2022) (UCL, FAL, CLRA, ACFA).

### E.    Plaintiffs' Breach Of Warranty Claims Fail

Plaintiffs allege the breach of three distinct express warranties: (i) Basic Truck Factory Warranty; (ii) Powertrain Warranty, and (iii) Federal Emissions Control Warranty ("FECW"). AC ¶¶ 200-204; 247-251; 300-304. Each of these claims fails as set forth below.

### 1.    Basic Truck and Powertrain Express Warranty Claims

Plaintiffs' express warranty claims fail as to TMHNA and TICO because neither defendant issued the Basic Truck or Powertrain Warranties for Plaintiffs' forklifts. The express warranties at issue here clearly state that the warrantor is TMH. *See, e.g.*, Declaration of Keri Borders ("Borders Decl."), Ex. A.[11] Therefore, Plaintiffs cannot pursue their claims for breach of express warranties based on the Basic Truck or Powertrain Warranties against TMHNA or TICO. *See Luppino v. Mercedes-Benz USA, LLC,* 2013 WL 6047556, at *6 (D.N.J. Nov. 12, 2013) (dismissing express warranty claims against parent company because plaintiffs "failed to provide facts to support the

---

[9] *See also Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 996-97 (N.D. Cal. 2010) (dismissing UCL claim where "plaintiffs have failed to show an affirmative duty to disclose"); *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017) (omission must be material); *Devane v. L'Oreal, USA Inc.*, 2020 WL 5518484, at *3, 6 (S.D.N.Y. Sept. 14, 2020) (same); *Mallory v. McCarthy & Holthus, LLP*, 2015 WL 2185413, at *3 (D. Nev. May 11, 2015) (same); N.J. Stat. Ann § 56:8-2 (prohibiting omission of any material fact).

[10] *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017) ("Parties that do not actually rely on a false statement or material omission have no claim under the ACFA."); *Ahern v. Apple, Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (dismissing UCL claim based on partial omission where "Plaintiffs have not specified which statements any of them saw or relied on").

[11] The express warranties are incorporated by reference in the AC and, accordingly, the court can properly consider them in connection with this motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a district court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" in deciding a motion to dismiss).

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

19

MOTION TO DISMISS THE COMPLAINT                                    Case No. 3:24-CV-06640-JSC

allegation that" the parent company warranted the vehicles).

Moreover, Plaintiffs' express warranty claims fail because they are premised on alleged defects in the *design* of the engines in the Class Vehicles and *not* defects in materials or workmanship. Plaintiffs make the generic assertion that Defendants breached the Basic Truck and Powertrain Warranties by failing to "fix the defective emission components free of charge," and failing to "repair or adjust the Class Vehicles' material and workmanship defects." *See, e.g.,* AC ¶¶ 307-308; 393-394; 457-458.  However, Plaintiffs' claims are premised entirely on alleged flaws in the *design* of the engines that caused them to "emit[] more pollutants than represented, allowed by law, or reasonably expected" rather than any defects in the actual materials and/or workmanship in the construction of these engines. AC ¶ 7. Under well-settled law, design defects are excluded from warranties that cover defects in "materials and workmanship." *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a product, while defects in 'design' are shortcomings that arise in the plans for a product's creation."); *Troup v. Toyota Motor Corp.,* 545 F. App'x 668, 668 (9th Cir. 2013) ("In California, express warranties covering defects in materials and workmanship exclude defects in design"); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 314 (N.D.N.Y. 2019) ("Courts in this circuit have found that a warranty protecting 'defects in materials or workmanship' covers manufacturing defects but not design defects") (collecting cases); *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018) (where the claims are more appropriately characterized as a design defect, a plaintiff cannot state a claim for breach of express warranty concerning materials and workmanship); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 (3d Cir. 2010) (affirming dismissal of breach of warranty claims based on alleged design defect where warranty covered only defects in materials and workmanship); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1285–87 (N.D. Ga. 2018) (same); *Freeman v. Toyota Motor Sales, USA, Inc.*, 2020 WL 7041810, at *3 (E.D. Mo. Nov. 30, 2020) (same); *Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at *12 (D.N.J. Sept. 11, 2015) (precluding warranty claims under a warranty covering "materials and workmanship" where plaintiffs argued "that the defect stem[med] directly from the flawed engine design," rather than defective manufacturing or assembly); *Tull Bros., Inc. v.*

20

*Peerless Prods., Inc.*, 953 F. Supp. 2d 1245, 1257 (S.D. Ala. 2013) ("[a] written warranty against defects in materials or workmanship does *not* encompass a warranty against defects in design.") (emphasis in original).

Finally, Plaintiffs do not even allege that their warranties are even still valid. As discussed previously, Plaintiffs make no specific reference to the applicable warranties, do not identify if they purchased their vehicles new or used, and do not identify when they purchased their vehicles. *See supra* at 18. Accordingly, they cannot even plausibly allege that they have a valid warranty, much less a warranty that has been breached since they also do not plausibly allege that they sought a repair under the terms of the warranty that was denied or was not able to be fixed.

### 2.     FECW/California Emissions Warranty Claims

Even if the Court does not find that the entire action is preempted under the CAA, Plaintiffs' claims based on the FECW and California Emissions Warranties ("CEW") (Cal. Code. Regs. 13 § 2425, 2435) are preempted because they rest on the allegation that Defendants breached the FECW and CEW by failing to inform Plaintiffs "that the Class Vehicles were defectively designed and manufactured to emit more pollution and achieve inferior output performance than what was disclosed to regulators and represented to [purchasers and lessees]." AC ¶¶ 307; 351-358; 861; 925. Thus, a decision regarding Defendants' alleged breach of the FECW or CEW would necessarily require a finding that Defendants breached the CAA's emissions standards. As determination and enforcement of CAA standards is exclusively reserved for the EPA, Plaintiffs' FECW and CEW claims are expressly preempted and should be dismissed. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.,* 295 F. Supp. 3d at 1024 (dismissing state law warranty claims based on alleged emissions flaws in EcoDiesel engines as preempted by the CAA); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, at *13 (breach of warranty based on FECW preempted by CAA).

### F.     Plaintiffs' Breach of Implied Warranty Claims Fail

Plaintiffs' claims for breach of implied warranty fail because implied warranties were expressly disclaimed by Defendants and Plaintiffs fail to plausibly allege that the Class Vehicles were unfit for their intended purpose.

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

*First,* Plaintiffs' implied warranty claims fail because the relevant warranties are expressly limited and are "IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE…" *See, e.g.*, Borders Decl., Ex. A. As this language is clear, conspicuous, and unambiguous, Plaintiffs' disclaimer against implied warranties is valid as a matter of law, and their implied warranty claims should be dismissed. *In re Caterpillar, Inc.*, 2015 WL 4591236, at *28-29 (dismissing implied warranty claim where it was "undisputed" that warranty on which plaintiffs relied for their express warranty claim contained a "conspicuous and valid" disclaimer).

*Second,* Plaintiffs do not adequately allege that the Class Vehicles were unfit for their intended purpose(s) because the alleged defect did not "compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage range." *Troup,* 545 F. App'x at 669 dismissing implied warranty claim where "defect alleged … merely required [Plaintiff] to refuel more often"); *Benipayo v. Volkswagen Grp. of Am., Inc.*, 2020 WL 553884, at *4 (N.D. Cal. 2020) (implied warranty is breached only when goods lack basic degree of fitness, and a product may be used even if it violates regulatory requirements, including emissions requirements); *Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) ("For an automobile, the implied warranty of merchantability is breached only when a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.") (citation omitted); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 558 (S.D.N.Y. 2016) (dismissing implied warranty claim).[12] Plaintiffs' allegations do not implicate their forklifts operability or safety and thus do not plausibly allege that the Class Vehicles are unfit for their intended operational purpose.

### G.    Plaintiffs' Unjust Enrichment Claims Fail

Plaintiffs' unjust enrichment claims fail for multiple, independent reasons.

---

[12] *See also Callen v. Daimler AG*, 2020 WL 10090879, at *12 (N.D. Ga. June 17, 2020) (dismissing implied warranty claim under Ohio law); *Pinon v. Daimler AG*, 2019 WL 11648560, at *9 (N.D. Ga. Nov. 4, 2019); *Herbst v. Deere & Co.*, 2021 WL 5567379, at *4 (S.D. Tex. Nov. 29, 2021) ("In the implied warranty of merchantability context, the word 'defect' means a condition of the goods that renders them unfit for the ordinary purposes for which they are used") (cleaned up); *DaimlerChrysler Corp. v. Morrow*, 895 So. 2d 861, 865 (Ala. 2004).

KING & SPALDING LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION TO DISMISS THE COMPLAINT                    Case No. 3:24-CV-06640-JSC

*First*, "[u]njust enrichment **is not a cause of action**, but rather, a general principle, underlying various legal doctrines and remedies." *Wen v. Greenpoint Mortg. Funding, Inc.*, 2021 WL 5449048, at *4 (N.D. Cal. Nov. 22, 2021) (emphasis added) (citation omitted); *see also M&M Consulting Group, LLC v. JP Morgan Bank, N.A.*, 2021 WL 71436, at *8 (C.D. Cal. Jan. 6, 2021) ("[T]here is no cause of action in California for unjust enrichment"). Because Plaintiffs have not pled any other viable claim, their "unjust enrichment theory cannot stand as a claim on its own." *Wen*, 2021 WL 5449048, at *4-*5.

*Second*, it is a duplicate of Plaintiffs' breach of warranty and fraudulent concealment claims. An unjust enrichment claim cannot survive "where it simply duplicates, or replaces, a conventional contract or tort claim." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014); *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *7 (N.D. Cal. June 14, 2021) ("Plaintiff's claim for unjust enrichment fails to identify any independent theory of unjust enrichment that does not rise or fall with her statutory claims or are merely duplicative of those claims. As such, this separate cause of action is also dismissed.").

*Third*, the existence of warranties between Plaintiffs and Defendant bar an unjust enrichment claim. Even if this Court "construe[d] the [unjust enrichment claim] as a quasi-contract claim seeking restitution," it would still fail because the claim "cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Udo v. Wells Fargo Bank, N.A.*, 2023 WL 8600791, at *3-*4 (N.D. Cal. Dec. 12, 2023); *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017) (dismissing unjust enrichment claim because "a quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights") (citation omitted); *Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542, at *12 (D.N.J. Mar. 30, 2012) (applying New York law and finding dismissal appropriate where sale of plaintiff's car was pursuant to "a contract with specific warranty obligations"); *Mitchell v. Gen. Motors LLC*, 2014 WL 1319519, at *15 (W.D. Ky. Mar. 31, 2014) (plaintiff "not permitted" to plead "breach of express warranty claims and unjust enrichment in the alternative"); *Callen*, 2020 WL 10090879, at *13 (same, applying Ohio law); *Pinon*, 2019 WL 11648560, at *13 (collecting cases). Here, Plaintiffs allege that multiple warranties were provided

23

to them when they purchased their forklifts. There can be no doubt that these warranties cover "the same subject matter" as the unjust enrichment claim.

*Fourth,* the unjust enrichment claim also fails because Plaintiffs have an adequate remedy at law (assuming they could plead a viable claim). *See*, *e.g.*, *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907-09 (N.D. Cal. 2021) (dismissing unjust enrichment claim where plaintiffs did not explain **why** monetary damages would not provide relief sought); *see also Milman v. FCA US LLC*, 2019 WL 3334612, at *9 (C.D. Cal. Apr. 15, 2019) (dismissing unjust enrichment claim and finding "even if pled in the alternative, this would not excuse the requirement that [plaintiff] plead facts showing no adequate legal remedy exists"). Plaintiffs assert they overpaid for their vehicles. *See* AC, ¶¶ 17-38. This is "exactly the type of injury for which legal remedies are appropriate." *Sharma*, 524 F. Supp. 3d at 908. Accordingly, the unjust enrichment claim should be dismissed.

### H.      The California Specific Claims Should Also Be Dismissed

The California Plaintiffs also bring claims for violation of the Song Beverly Consumer Warranty Act (California Count V-VI) and Failure to Recall/ Retrofit. (California Count VIII). Both of those claims fail. The Song-Beverly Act only applies to "[c]onsumer goods," which are "new product[s] or part[s] thereof that [are] used, bought, or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1791(a). Plaintiffs are businesses that purchased the forklifts in connection with their businesses. AC ¶¶ 17, 21, 22, 23, 28. Accordingly, they are not "consumer goods." *See Dipito LLC v. Siderman*, 2022 WL 3205205, at *4 (S.D. Cal. Apr. 18, 2022) (dismissing Song-Beverly warranty claim because plaintiff "purchased the Subject Vehicle for commercial—not personal— purposes").

Moreover, the Failure to Recall/Retrofit claim is barred by the economic loss doctrine. *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 6072406, at *14 (S.D. Fla. Oct. 14, 2016) ("The economic loss rule applies to negligent failure to recall claims" under California law). It also fails because an essential element of this claim that the "defendant knew or reasonably should have known that the product was dangerous when used in a reasonably foreseeable manner," *Arnett v. Seaside Transp. Servs.*, 2014 WL 117325, at *3 n.6 (N.D. Cal. Jan. 13, 2014), and the AC does not allege any facts that the Class Vehicles pose a danger to Plaintiffs. *Sivilli v. Wright Med. Tech.,*

*Inc.*, 2019 WL 3803808, at *3 (S.D. Cal. Aug. 13, 2019) (dismissing failure-to-recall claim where plaintiff "only offer[ed] a formulaic recitation").

**V.    CONCLUSION**

For the foregoing reasons, and for good cause shown, Defendants respectfully request that the motion to dismiss should be granted in its entirety and without leave to amend.

Dated: January 31, 2025

KING & SPALDING LLP

By: */s/ Keri E. Borders*
    Alexander Calfo
    Keri E. Borders
    Rebecca B. Johns

*Attorney for Defendants*
TOYOTA INDUSTRIES CORPORATION,
TOYOTA MATERIAL HANDLING, INC., AND
TOYOTA MATERIAL HANDLING, N.A.