John P. Hooper (*pro hac vice*)
Jacqueline Seidel (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas, 37th Floor
New York, NY 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
jhooper@kslaw.com
jseidel@kslaw.com

Alexandra Kennedy-Breit
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: 213.443.4355
akennedy-breit@kslaw.com

*Attorneys for Defendant*
Toyota Motor Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BROADMOOR LUMBER & PLYWOOD CO., AIR GROUP LLC, ALEXANDER MOVING CO., et al, <br><br> Plaintiffs, <br><br> v. <br><br> TOYOTA INDUSTRIES CORPORATION, TOYOTA MATERIAL HANDLING N.A., TOYOTA MATERIAL HANDLING, INC., and TOYOTA MOTOR CORPORATION, <br><br> Defendants. | Case No. 3:24-cv-06640-JSC <br><br> *Honorable Judge Jacqueline Scott Corley* <br><br> **DEFENDANT TOYOTA MOTOR CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Hearing Date:  January 8, 2026 <br> Hearing Time:  10:00 a.m. <br><br> Action filed:  September 22, 2024 <br> Trial Date:  None Set |

## **TABLE OF CONTENTS**

I.    STATEMENT OF ISSUES TO BE DECIDED .................................................................... 1

II.   INTRODUCTION ............................................................................................................. 2

III.  FACTUAL BACKGROUND............................................................................................. 3

IV.   LEGAL STANDARDS GOVERNING THIS MOTION.................................................... 4

V.    ARGUMENT..................................................................................................................... 5

    A.    TMC DOES NOT SUBSTANTIALLY CONTROL TICO OR ITS SUBSIDIARIES .. 5

        (1)    TMC Does Not Have a Unity of Interest with TICO or its Subsidiaries................ 6

        (2)    The Amended Complaint Pleads No Facts Regarding Fraud or Injustice.............. 8

    B.    TMC'S CONTACTS DO NOT GIVE RISE TO PERSONAL JURISDICTION .......... 8

    C.    PLAINTIFFS' CLAIMS FAIL FOR LACK OF ARTICLE III STANDING.............. 12

    D.    FEDERAL LAW PREEMPTS PLAINTIFFS' CLAIMS ............................................ 13

        (1)    The CAA Expressly Preempts Plaintiffs' Claims.................................................. 14

        (2)    Plaintiffs' Claims Are Also Impliedly Preempted................................................ 16

VI.   CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*,
998 F. Supp. 10 (D. Mass. 1997) ................................................................................. 14

*Apple Inc. v. Allan & Assocs. Ltd.*,
445 F. Supp. 3d 42 (N.D. Cal. 2020) ............................................................................ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 5

*AutoRABIT Holding, Inc. v. Copado, Inc.*,
No. 23-CV-01247-JST, 2024 WL 24328 (N.D. Cal. Jan. 2, 2024) ........................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 5

*Braman Motors, Inc. v. BMW of N. Am., LLC*,
No. 17-CV-23360, 2019 WL 7759096 (S.D. Fla. Sept. 30, 2019) ........................................ 6

*Buckman Company v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001) ..................................................................................................... 16

*California v. Texas*,
593 U.S. 659 (2021) ..................................................................................................... 12

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ........................................................................... 12

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................................... 16

*Chubchai v. AbbVie, Inc.*,
599 F. Supp. 3d 866 (N.D. Cal. 2022) ............................................................................ 7

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ..................................................................................................... 14

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ............................................................................ 6

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) ........................................................................................ 11

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................................... 5

ii

*Cox v. CoinMarketCap OPCO, LLC,*
  112 F.4th 822 (9th Cir. 2024)................................................................................................... 5

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018).................................................................................................. 12

*Dole Food Co. v. Patrickson,*
  538 U.S. 468 (2003) ................................................................................................................. 5

*Engine Mfrs. Ass'n v. U.S. E.P.A.,*
  88 F.3d 1075 (D.C. Cir. 1996) ............................................................................................... 14

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.,*
  65 F.4th 851 (6th Cir. 2023)............................................................................................. 17, 18

*Ford Motor Company v. Montana Eighth Judicial District Court,*
  592 U.S. 351 (2021) ............................................................................................................... 11

*Gelasio v. Zafar,*
  No. 3:24-CV-01555-JSC, 2024 WL 4634058 (N.D. Cal. Oct. 30, 2024)................................. 9

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.,*
  972 F.3d 1101 (9th Cir. 2020)................................................................................................. 9

*Hindsman v. Gen. Motors LLC,*
  No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018) .................................... 12

*J. McIntyre Machinery, Ltd. v. Nicastro,*
  564 U.S. 873 (2011) ............................................................................................................... 10

*Jackson v. Gen. Motors Corp.,*
  770 F. Supp. 2d 570 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors
  Corp.,* 472 F. App'x 80 (2d Cir. 2012) ............................................................................. 14, 16

*Kinnee v. TEI Biosciences Inc.,*
  No. 22-CV-604 JLS (AHG), 2022 WL 14118943 (S.D. Cal. Oct. 24, 2022)......................... 10

*Kramer Motors, Inc. v. Brit. Leyland, Ltd.,*
  628 F.2d 1175 (9th Cir. 1980).................................................................................................. 7

*Lefkowtiz v. Scytl USA,*
  No. 15-CV-05005-JSC, 2016 WL 537952 (N.D. Cal. Feb. 11, 2016).................................... 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ................................................................................................................. 4

*LNS Enters. LLC v. Cont'l Motors, Inc.,*
  22 F.4th 852 (9th Cir. 2022)................................................................................................... 11

iii

*Morales v. TransWorld Airlines, Inc.*,
 504 U.S. 374 (1992) ................................................................................................................ 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Env't Conservation*,
 17 F.3d 521 (2d Cir. 1994)...................................................................................................... 13

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
 813 F.3d 718 (9th Cir. 2016)................................................................................................... 14

*Nathan Kimmel, Inc. v. DowElanco*,
 275 F.3d 1199 (9th Cir. 2002)........................................................................................... 16, 17

*Navarro v. Block*,
 250 F.3d 729 (9th Cir. 2001)..................................................................................................... 5

*Nunez v. Saks Inc.*,
 771 F. App'x 401 (9th Cir. 2019) ........................................................................................... 12

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006).................................................................................................. 10

*Ranza v. Nike, Inc.*,
 793 F.3d 1059 (9th Cir. 2015).......................................................................................... 5, 6, 7

*Reddy v. Litton*,
 912 F.2d 291 (9th Cir. 1990).................................................................................................... 18

*Reynolds v. Binance Holdings Ltd.*,
 481 F. Supp. 3d 997 (N.D. Cal. 2020) ...........................................................................*passim*

*Rush v. Savchuk*,
 444 U.S. 320 (1980) .................................................................................................................. 9

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
 No. CV 15-8629 FMO (EX), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) ....................... 13

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004).............................................................................................. 9, 10

*Seedman v. Cochlear Americas*,
 No. SACV1500366JVSJCGX, 2015 WL 4768239 (C.D. Cal. Aug. 10, 2015)..................... 10

*Seymour v. Hull & Moreland Eng'g*,
 605 F.2d 1105 (9th Cir. 1979).................................................................................................... 8

*Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*,
 862 F.2d 1449 (11th Cir. 1989)................................................................................................ 15

iv

DEFENDANT'S MOTION & MPA                                  CASE NO. 3:24-cv-06640-JSC
ISO MOTION TO DISMISS FAC

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ................................................................................................ 8

*Thornton v. Bayerische Motoren Werke AG*,
    439 F. Supp. 3d 1303 (N.D. Ala. 2020) .......................................................................................... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    264 F. Supp. 3d 1040 (N.D. Cal. 2017) ............................................................. 14, 15, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    959 F.3d 1201 (9th Cir. 2020)........................................................................................ 15

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998)........................................................................................ 13

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
    No. 21-CV-00227-JSC, 2021 WL 5053087 (N.D. Cal. Nov. 1, 2021)...................................... 4

**Statutes**

42 U.S.C. § 7401 .................................................................................................................. 13

42 U.S.C. § 7521 .................................................................................................................. 13

42 U.S.C. § 7522 .................................................................................................................. 13

42 U.S.C. § 7525 .................................................................................................................. 13

42 U.S.C. § 7541 ............................................................................................................. 13, 15

42 U.S.C. § 7543 ............................................................................................................. 13, 15

Cal. Code Civ. Pro. § 410.10 ................................................................................................. 9

**Other Authorities**

40 C.F.R. § 86 ...................................................................................................................... 13

40 C.F.R. § 1065 .............................................................................................................. 13, 15

40 C.F.R. § 1066 .............................................................................................................. 13, 15

Fed. R. Civ. P. 8 .................................................................................................................... 1

Fed. R. Civ. P. 12 .............................................................................................................. 1, 4

DEFENDANT'S MOTION & MPA                                        CASE NO. 3:24-cv-06640-JSC
ISO MOTION TO DISMISS FAC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 8, 2026, at 10:00 AM or as soon thereafter as the matter may be heard in Courtroom 8 (19th Floor) of the United States District Court for the Northern District of California, with the Hon. Jacqueline Scott Corley presiding, located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Toyota Motor Corporation ("Defendant" or "TMC") will and hereby does move the Court for entry of an order dismissing Plaintiffs' Amended Class Action Complaint ("Amended Complaint") in its entirety as to the claims asserted against TMC.

Defendant brings this Motion to Dismiss ("Motion") under Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), and 12(b)(6), on the following grounds:

1. This Court cannot exercise personal jurisdiction over the claims asserted against TMC based on any alleged forum-based contacts of other Defendants, nor do Plaintiffs plead sufficient facts to establish personal jurisdiction over TMC directly.

2. Plaintiffs lack standing to sue TMC since any alleged injuries they have suffered are not fairly traceable to TMC, and they also lack standing to seek injunctive relief.

3. Federal law preempts Plaintiffs' claims, which interfere with the uniform statutory scheme for emissions regulations set forth in the Clean Air Act ("CAA") and enforced by the Environmental Protection Agency ("EPA").

TMC's Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Amended Complaint, any Reply in Support of the Motion, and such further evidence and arguments as may be made at any hearing on the Motion.

## MEMORANDUM AND POINTS OF AUTHORITIES

### I. STATEMENT OF ISSUES TO BE DECIDED

TMC brings this Motion under Rules 8, 12(b)(1), 12(b)(2), and 12(b)(6).  TMC's Motion requires the Court to decide the following issues:

1. Does this Court have personal jurisdiction over the claims asserted against TMC?

2. Do Plaintiffs have standing to sue TMC for damages or injunctive relief?

3. Does federal law preempt Plaintiffs' claims?

1

## II.    INTRODUCTION

Plaintiffs seek to inject TMC into this case and hold it responsible for the alleged misconduct of Toyota Industries Corporation ("TICO") and its American-based subsidiaries, Toyota Material Handling N.A. ("TMHNA") and Toyota Material Handling, Inc. ("TMH USA").  But TMC is merely a shareholder of TICO—and a minority shareholder at that.  *See* Am. Compl. ¶ 52.  TMC had no role in, or knowledge of, the purported emissions testing and certification noncompliance issues alleged by Plaintiffs.  It did not design, develop, or manufacture the Class Engines.  It had no role in the shipping, distribution, advertising, or sale of the Class Engines (or the Class Vehicles containing them).  Instead, Plaintiffs engage in impermissible group pleading by lumping all four defendants together throughout their claims, repeatedly alleging that "Defendants" are liable under state law.  But Plaintiffs have pled no facts even remotely connecting TMC to the Class Engines, let alone the purported misconduct at the root of their claims.

Further, Plaintiffs' gambit is defeated by the complete absence of any facts showing that their claims arise out of or relate to the forum-related activities of TMC—a Japanese corporation with no California presence.  While Plaintiffs allege that TMC exerts "substantial control" over ***TICO's*** American-based subsidiaries, *id*. ¶ 58, they plead no facts in support of this assertion.  Indeed, their theory hinges entirely on the unremarkable fact that TMC and TICO have, at times, shared a few overlapping officers or directors.  But the mere presence of common officers or directors is nowhere near sufficient to pierce the corporate veil and permit this Court to exercise personal jurisdiction over TMC.  As this Court has already recognized, courts will "only pierce the corporate veil in exceptional circumstances" when evaluating personal jurisdiction and "placement of a parent's directors on the subsidiary's board does not singularly create an alter-ego relationship." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020) (Corley, J.) (brackets and quotation marks omitted).  Plaintiffs offer no additional allegations that warrant a different outcome—in fact, any inference of "control" is even more attenuated here, where TICO and TMC do not even share a parent-subsidiary relationship.  Compounding matters, Plaintiffs also lack Article III standing to pursue any of their claims because their alleged injuries are not fairly traceable to TMC.  If these jurisdictional infirmities were not enough to compel

DEFENDANT'S MOTION & MPA                                      CASE NO. 3:24-cv-06640-JSC
ISO MOTION TO DISMISS FAC

dismissal (and they are), Plaintiffs' warranty, fraud, and consumer protection claims are expressly and impliedly preempted. Indeed, Plaintiffs' claims all hinge on allegations that Defendants violated federal standards relating to the control of emissions, which directly implicates the CAA's express preemption provision. Moreover, Plaintiffs' state-law claims constitute a fraud-on-the-agency theory of liability that the U.S. Supreme Court has held is impliedly preempted because it conflicts with a federal agency's pervasive regulatory and enforcement authority—a ruling that federal courts have applied specifically to EPA's authority in analogous "emissions cheating" cases.

For all these reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety as to the claims asserted against TMC.

## III.     FACTUAL BACKGROUND

Plaintiffs are businesses that purchased certain models of TICO forklifts (the "Class Vehicles") from authorized dealerships and third-party sellers in various states throughout the country. Am. Compl. ¶¶ 17–38. They allege that Defendants TMHNA and TMH USA are the U.S.-based subsidiaries of TICO and are responsible for manufacturing, distributing, and selling the Class Vehicles. *Id.* ¶¶ 45–51. And they allege that Defendant TICO "engineered, designed, developed, manufactured, and tested" the engines ("Class Engines") in the Class Vehicles, shipped a number of Class Engines to the United States, and also "performed the required U.S. federal and state regulatory emissions and performance tests for the Class Engines to be sold in the United States." *Id.* ¶¶ 40–42. According to Plaintiffs, TICO engaged in fraudulent conduct when testing the emissions of the Class Engines by using emissions values different from those actually measured during testing, modifying engine software, replacing parts used during testing, using different engines for the testing than the engines actually used in the Class Vehicles, and cheating on "output tests" related to engine performance. *Id.* ¶¶ 78–93. The Amended Complaint alleges that TICO and TMH marketed the Class Vehicles on their websites as environmentally friendly even though, due to the alleged cheating on emissions tests, they were not. *Id.* ¶¶ 101–11.

Although Plaintiffs repeatedly refer to "Toyota" and lump all "Defendants" together in the Amended Complaint, what is missing are specific allegations linking TMC to any of the alleged emissions-related misconduct or even the California market. Even though Plaintiffs acknowledge that each Defendant is a separate corporation, *id.* ¶¶ 39–52, the allegations related to TMC are sparse at best. Plaintiffs acknowledge that TMC is a Japanese company with its principal place of business in Japan. *Id.* ¶ 52. They further allege that TMC owns 24.7% of TICO's voting rights and works closely with TICO on engine design, development, and testing. *Id.* ¶¶ 114–15. And they allege that there is "substantial cross-pollination among the leadership at TMC and TICO" due to a handful of overlapping executives at the two companies. *Id.* ¶ 54. But there are no factual allegations showing that TMC exercised pervasive control over TICO or its subsidiaries or otherwise linking TMC to the Class Vehicles or TICO's purported misconduct.

## IV.   LEGAL STANDARDS GOVERNING THIS MOTION

A defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant" and where the motion is "based on written materials rather than an evidentiary hearing," the plaintiff must make a "prima facie showing of jurisdictional facts." *Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952, at *2 (N.D. Cal. Feb. 11, 2016) (Corley, J.) (quotation marks omitted).

Separate from the lack of personal jurisdiction, Article III standing is a "threshold question in every federal case" and Plaintiffs "bear the burden of establishing the existence of Article III standing and, at the pleading stage, must clearly allege facts demonstrating each element." *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, No. 21-CV-00227-JSC, 2021 WL 5053087, at *1 (N.D. Cal. Nov. 1, 2021) (Corley, J.) (quotation marks omitted). To establish Article III standing under Rule 12(b)(1), a plaintiff "must [1] have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is [2] fairly traceable to the challenged action of the defendant and [3] likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

DEFENDANT'S MOTION & MPA
ISO MOTION TO DISMISS FAC

CASE NO. 3:24-cv-06640-JSC

"A motion to dismiss [under Rule 12(b)(6)] tests whether the allegations in a complaint, if true, amount to an actionable claim." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## V.   ARGUMENT

### A.   TMC DOES NOT SUBSTANTIALLY CONTROL TICO OR ITS SUBSIDIARIES

Plaintiffs assert that the Court has personal jurisdiction over TMC because TMC "exert[s] substantial control over" TICO and its subsidiaries. Am. Compl. ¶ 58. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities," and that corporate separateness shields parents and subsidiaries from liability created by the conduct of other, related entities. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). That is why the "existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction," and "corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). To impute the alleged contacts of TICO or its subsidiaries to TMC, Plaintiffs must satisfy the "'alter ego test, which obligates a party to make out a 'prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 835 (9th Cir. 2024) (quotation marks and alterations omitted); *see also Reynolds*, 481 F. Supp. 3d at 1004 ("[A] parent-subsidiary relationship does not on its own establish two entities as alter egos[.]"). This Court will "only pierce the corporate veil in exceptional circumstances" when evaluating the alter ego test. *Reynolds*, 481 F. Supp. 3d at

1004 (quotation marks omitted).  The Amended Complaint falls far short of demonstrating such circumstances.

### (1)    TMC Does Not Have a Unity of Interest with TICO or its Subsidiaries.

Plaintiffs attempt to satisfy the first alter ego requirement based on conclusory allegations that TMC works with TICO in engine design and other business activities, including issues related to engine certification.  Am. Compl. ¶¶ 52–54.  Even if the facts bore this out (and they do not), this Court has already recognized that a "parent's 'substantial' involvement in the subsidiary's activity is insufficient 'to negate the formal separation between the two entities' for jurisdictional purposes—a parent must be involved in a subsidiary's routine day-to-day operations such that there is a failure of the entities to observe their separate 'corporate formalities.'" *Reynolds*, 481 F. Supp. 3d at 1004 (quoting *Ranza*, 793 F.3d at 1075) (common business activities like a shared address and operating the same websites and platforms are insufficient); *Ranza*, 793 F.3d at 1074 (rejecting alter ego theory even where one company was "heavily involved" in the other's operations, including by exercising control over "overall budget," approving large purchases, and establishing "general human resource policies for both entities"); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983–84 (N.D. Cal. 2016) (CVS Health and CVS Pharmacy were not alter egos despite the fact that "CVS Health presents itself as one integrated company on its website and in government filings for marketing purposes").  Other courts have applied this principle to reject personal jurisdiction specifically over foreign vehicle manufacturers.  *See Braman Motors, Inc. v. BMW of N. Am., LLC*, No. 17-CV-23360, 2019 WL 7759096, at *5 (S.D. Fla. Sept. 30, 2019) ("general allegation[s]" regarding the "corporate relationship" between a foreign vehicle manufacturer and U.S. subsidiaries were insufficient for personal jurisdiction); *see also Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1312 (N.D. Ala. 2020) (allegations that BMW North America was "part of the business of BMW Group" failed to establish personal jurisdiction over foreign corporation BMW AG based on veil-piercing theory).

Plaintiffs must instead plead a unity of interest by showing "pervasive control over the subsidiary, such as when [the] parent dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Reynolds*, 481 F. Supp. 3d at 1004

6

(quotation marks omitted). While courts consider a non-exclusive list of nine factors in making that determination,[1] Plaintiffs allege **only one fact** about TMC's purported control over TICO (or the other subsidiaries): that there is "substantial cross-pollination" between TMC and TICO leadership because TICO executives have held simultaneous roles at TMC and vice versa. Am. Compl. ¶ 54. But this Court has **already rejected that allegation as the basis for a unity of interest**, finding that two companies' sharing board members and a CFO did not "on its own sufficiently establish a unity of interest." *Reynolds*, 481 F. Supp. 3d at 1005. The Ninth Circuit has similarly recognized that even "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control" and rejected an alter ego claim where "[s]ome employees and management personnel move[d] between the entities." *Ranza*, 793 F.3d at 1073; *see also, e.g.*, *Kramer Motors, Inc. v. Brit. Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (rejecting alter ego claim where "some directors of the British defendants have sat on the board of BLMI, the United States importer subsidiary"). Other courts in this District have granted motions to dismiss for lack of personal jurisdiction based on allegations of overlapping control. *See, e.g.*, *AutoRABIT Holding, Inc. v. Copado, Inc.*, No. 23-CV-01247-JST, 2024 WL 24328, at *4 (N.D. Cal. Jan. 2, 2024) (granting motion to dismiss where plaintiff could only "argue[] that key individuals held leadership positions at both Copado, Inc. and Copado Holdings, Inc., and that those individuals controlled operations 'in a manner that benefited Copado, Inc.'"); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020) ("In the absence of evidence of actual control, courts generally presume that directors can and do change hats to represent each corporation separately.") (quotation marks omitted); *Chubchai v. AbbVie, Inc.*, 599 F. Supp. 3d 866, 876 (N.D. Cal. 2022) (common ownership not dispositive) (collecting cases).

As this Court has recognized, a "plaintiff's failure to discuss a unity of interest factor weighs against the finding of alter ego liability." *Reynolds*, 481 F. Supp. 3d at 1007; *see also Chubchai*,

---

[1] "[R]elevant factors include the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Reynolds*, 481 F. Supp. 3d at 1004 (quotation marks omitted).

7

DEFENDANT'S MOTION & MPA
ISO MOTION TO DISMISS FAC

CASE NO. 3:24-cv-06640-JSC

599 F. Supp. 3d 866, 876 (N.D. Cal. 2022) (observing that the "failure to address the majority of the remaining factors strongly weighs against a finding" of control). Plaintiffs' conclusory allegation that TMC exerts "substantial control" is plainly insufficient in light of their failure to address any of the other factors, let alone show that even one factor (a few common executives) remotely suggests a unity of interest. *See Reynolds*, 481 F. Supp. 3d at 1007 ("To sufficiently allege a theory of alter ego, however, a plaintiff must offer more than labels and conclusions[.]").

> **(2)   The Amended Complaint Pleads No Facts Regarding Fraud or Injustice.**

Even if Plaintiffs alleged sufficient facts to plead a unity of interest (they do not), exercising personal jurisdiction over TMC based on an alter ego theory would still be impermissible. That is because Plaintiffs do not plead facts showing how an "inequitable result would follow from a failure to disregard the separate identities" of TMC, TICO, and TICO's subsidiaries. *Reynolds*, 481 F. Supp. 3d at 1008. Although the Amended Complaint is replete with various allegations of fraud and misconduct, it lacks allegations of "bad faith or fraudulent intent in forming" TICO or its subsidiaries (for instance, inadequate capitalization "from the outset"). *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1113 (9th Cir. 1979). Plaintiffs' inability to allege such facts is unsurprising, given TMC's status as a mere minority shareholder rather than a corporate parent of TICO. Allegations that the alleged emissions testing and certification issues may continue in the future do not suffice either. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (rejecting argument that the "inequitable result of failing to assert personal jurisdiction . . . is the potential for the continued unfair billing conduct" to occur, noting that other parties were properly before the court to "answer [p]laintiff's claim"). The lack of any allegations with respect to this requirement confirms that this Court cannot exercise personal jurisdiction over TMC based on an alter ego theory.

> **B.   TMC'S CONTACTS DO NOT GIVE RISE TO PERSONAL JURISDICTION**

Because Plaintiffs cannot rely on the forum-based contacts of TICO or its subsidiaries to establish jurisdiction over TMC, they must show that the exercise of personal jurisdiction over TMC is proper based on any independent contacts with California that TMC may have. *See*

8

DEFENDANT'S MOTION & MPA
ISO MOTION TO DISMISS FAC

CASE NO. 3:24-cv-06640-JSC

*Reynolds*, 481 F. Supp. 3d at 1002–03 (outlining analysis for personal jurisdiction under California law). Acknowledging that TMC is a Japanese company with its principal place of business in Japan, Plaintiffs do not assert general personal jurisdiction over TMC. Am. Compl. ¶¶ 52, 57 (alleging only specific jurisdiction under Cal. Code Civ. Pro. § 410.10). Section 410.10 is "coextensive with federal due process requirements," so the "jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). The Ninth Circuit applies a "three-prong test for analyzing claims of specific jurisdiction": (1) the "non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof," or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must arise out of or relate to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must be reasonable." *Gelasio v. Zafar*, No. 3:24-CV-01555-JSC, 2024 WL 4634058, at *3 (N.D. Cal. Oct. 30, 2024) (Corley, J.). "Plaintiff must satisfy the first two prongs of this test, at which point the burden shifts to the defendant to demonstrate the exercise of jurisdiction would be unreasonable." *Id.* (quotation marks omitted). Plaintiffs cannot satisfy any of these factors (let alone all three), which means personal jurisdiction does not lie over TMC based on its purported contacts with California.

Starting with purposeful availment or direction,[2] Plaintiffs repeatedly allege jurisdiction against "Defendants" collectively and rely on "Defendants' contacts with California" to plead jurisdiction. *See, e.g.*, Am. Compl. ¶¶ 58–59, 60, 63. This type of group pleading is plainly impermissible. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) (rejecting court's attempt to attribute one defendant's contacts to another by "considering the 'defending parties' together and aggregating their forum contacts," the result of which was "plainly unconstitutional" because the minimum contacts requirement "must be met as to each defendant over whom a . . . court exercises

---

[2] "Purposeful availment" and "personal direction" are "distinct concepts." *Schwarzenegger*, 374 F.3d at 802. The "purposeful availment analysis is most often used in suits sounding in contract," whereas the purposeful direction analysis "is most often used in suits sounding in tort." *Id.* Since Plaintiffs plead contract-based warranty claims and tort-based claims sounding in fraud, "both tests are relevant." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).

9

jurisdiction"). Focusing only on the allegations against *TMC* shows that Plaintiffs do not come close to pleading purposeful availment or direction.

Plaintiffs allege that TMC "fostered a culture of noncompliance and fraud at its many subsidiaries and affiliates, and bears responsibility for their failures" (Am. Compl. ¶¶ 112–17), but none of those allegations show that TMC had any contacts with California. *See Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."). Nor does the Amended Complaint plead any facts supporting purposeful direction, since boilerplate allegations that TMC is "in the business of designing, developing, manufacturing, and selling" automobiles are also not enough to show specific targeting of California. *See, e.g.*, *Kinnee v. TEI Biosciences Inc.*, No. 22-CV-604 JLS (AHG), 2022 WL 14118943, at *5 (S.D. Cal. Oct. 24, 2022) (plaintiff failed "to allege sufficient facts to meet the purposeful direction test" by alleging that defendant "designed, manufactured, promoted[,] sold, and engaged in post-market surveillance regarding [a medical] device, including the specific device implanted in [p]laintiff" that the defendant marketed to plaintiff's prescribing physician, since such allegations "fail[ed] to demonstrate that [the defendant] expressly aimed any of its efforts at California"); *Seedman v. Cochlear Americas*, No. SACV1500366JVSJCGX, 2015 WL 4768239, at *5 (C.D. Cal. Aug. 10, 2015) (plaintiff did not plead purposeful direction where it did not "point to what 'more' the defendant did to target its products to California," since the defendant conducted "no manufacturing, marketing, or selling of products in California, and its distributor CAM market[ed] and [sold] the products entirely on its own"); *see also J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) ("[I]t is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant."). Plaintiffs' inability to allege facts supporting purposeful direction comes as no surprise since TMC did not manufacture, distribute, sell, or warrant the vehicles in the United States (let alone California), which means none of the Plaintiffs can show that their vehicles have any connection to TMC.

Plaintiffs' failure to satisfy this threshold requirement means that the Court need not even consider the other two prongs of the specific jurisdiction analysis. *Pebble Beach Co. v. Caddy*, 453

10

F.3d 1151, 1155 (9th Cir. 2006).  In any event, even if the Amended Complaint did adequately allege TMC's forum-related activities (and it does not), Plaintiffs cannot show that their claims arise out of or relate to such activities because their claims all focus on TICO's alleged misconduct, not TMC's.  For instance, TMC was not involved with the emissions testing or certification for the Class Engines, including any of the purported misconduct related to modifying software, using different engines for the emissions tests compared to the engines in the production models, or allegedly cheating on output tests for performance metrics.  Rather, Plaintiffs allege that **TICO** engaged in all of that purported misconduct underlying their claims.  Am. Compl. ¶¶ 71–111. Additionally, the Amended Complaint does not allege that TMC distributed the Class Vehicles in the United States, issue warranties for those vehicles, or engage in any advertisements for those vehicles in the United States, *see id.* ¶¶ 52–54, 112–17, which confirms that none of Plaintiffs' fraud, warranty, and consumer protection claims relate to TMC's conduct.  *See, e.g.*, *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022) ("Textron did not itself manufacture, design, or service the plaintiffs' aircraft in Arizona (or anywhere), thus making clear that plaintiffs' claim does not 'arise out of' any Textron contacts in Arizona").[3]

Finally, Plaintiffs' failure to allege sufficient facts regarding purposeful direction or availment or that their claims arise out of any alleged contacts with California means that the exercise of specific jurisdiction would be unreasonable.  While the Ninth Circuit considers several factors to determine reasonableness, the "smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).  The total **lack** of any allegations showing that TMC purposefully targeted California (or that Plaintiffs' claims arise out of or relate to any TMC activity

---

[3] Plaintiffs may rely upon the Supreme Court's decision in *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351, 364–66 (2021), in support of their argument that the Court has personal jurisdiction.  In that case, the Supreme Court held that Montana and Minnesota could exercise personal jurisdiction over Ford where the company conducted substantial business in both states through its dealership network and advertising efforts.  Significantly, the "Montana- and Minnesota-based conduct relate[d]" to the plaintiffs' claims because the plaintiffs were residents of those states and their claims arose from car accidents in those states.  *Id*. at 365.  Here, by contrast, Plaintiffs do not allege that TMC engaged in any conduct in their states of residence, including selling them their forklifts.

11

in California) means that the exercise of specific jurisdiction is plainly unreasonable.

**C.     PLAINTIFFS' CLAIMS FAIL FOR LACK OF ARTICLE III STANDING**

Plaintiffs' claims against TMC suffer from another threshold jurisdictional flaw related to their inability to plead a plausible alter ego theory. To establish Article III standing, Plaintiffs must allege facts showing that their injuries are "fairly traceable" to TMC's purportedly wrongful conduct. *California v. Texas*, 593 U.S. 659, 668–69 (2021) (quotation marks omitted). As explained above, there is no way to connect Plaintiffs' purported injuries (financial damage due to the allegedly fraudulent engine certification and testing process) to TMC because the Amended Complaint does not plead sufficient facts to establish pervasive control over TICO, let alone its two subsidiaries. *See id.* at 675 ("[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded, but it is ordinarily substantially more difficult to establish") (alterations and quotation marks omitted); *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (finding that plaintiff did not "adequately show[] her injury [was] traceable to the actions of Wal-Mart Stores" because the allegations were "insufficient to show that Wal-Mart Stores was involved in the alleged wrongdoing" or "even direct[ed] the type of activity [p]laintiff complain[ed] of").[4]

Even if this Court finds that Plaintiffs have standing to pursue their claims against TMC, it should dismiss their request for injunctive relief for lack of standing for two additional reasons. First, they must demonstrate that the threat of future injury is "actual and imminent, not conjectural or hypothetical," and "certainly impending," rather than merely "possible," to obtain an injunction against future harm. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quotation marks omitted). Plaintiffs' failure to allege that they will purchase any Class Vehicles in the future forecloses their request for relief under *Davidson*. *See Nunez v. Saks Inc.*, 771 F. App'x 401, 402 (9th Cir. 2019) (relying on *Davidson* and holding that plaintiff lacked standing to

---

[4] At a minimum, this Court should dismiss Plaintiffs' nationwide claims for lack of standing insofar as Plaintiffs pursue claims under the laws of states other than those in which they reside. *See, e.g.*, *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *16–17 (N.D. Cal. June 1, 2018) (Corley, J.) (dismissing at pleading stage claims brought on behalf of putative class members from states in which no named plaintiff resided based on lack of Article III standing) (collecting cases).

DEFENDANT'S MOTION & MPA                                        CASE NO. 3:24-cv-06640-JSC
ISO MOTION TO DISMISS FAC

seek injunctive relief because "he has not alleged any intent to purchase a Saks Fifth Avenue branded product in the future").  Second, "[i]njunctive relief is proper only if monetary damages or other legal remedies will not compensate the plaintiffs for their injuries," *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998), which means that the availability of a damages remedy here bars Plaintiffs from obtaining equitable relief, *see Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016) (collecting cases).

### D.     FEDERAL LAW PREEMPTS PLAINTIFFS' CLAIMS

Even if this Court could exercise personal jurisdiction over TMC (it cannot) or Plaintiffs had standing to sue TMC (they do not), their claims would still fail on the merits because federal law expressly and impliedly preempts them.

The EPA regulates new motor vehicle engines—including emissions control systems and related technology to monitor or control emissions—pursuant to its authority under the CAA.  42 U.S.C. § 7401 *et seq.*; 40 C.F.R. § 86.010-2; *id.* § 86-094-21; *id.* § 1068.501(a)(1)(i).  The CAA and EPA's regulations establish federal emission standards for new vehicles, and the EPA also regulates the procedures for testing new motor vehicle engines to certify compliance with these standards.  42 U.S.C. §§ 7521, 7541(b); 40 C.F.R. § 86.007-11; 40 C.F.R. Part 1065; *id.* Part 1066. Manufacturers must certify that they comply with these emissions testing requirements and that the results satisfy EPA's emissions standards.  40 C.F.R. § 86.001-21(b)(1)(i)(C); *id.* § 86.007-21(p)(1); *id.* § 1036.205(i).  The manufacturer can sell the engine in the United States only after obtaining certification from EPA that the engine complies with applicable emissions standards.  42 U.S.C. § 7522(a)(1).   The EPA can establish emissions standards, monitor manufacturers' compliance with those standards, and enforce compliance with those standards.   42 U.S.C. §§ 7521(a)(1), 7525, 7541(b), (c)(1).

The CAA includes an express preemption provision that confirms the federal government's pervasive authority over federal emissions standards: "No State or any political division thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."  *Id*. § 7543(a) ("Section 209").  This preemption provision is the "cornerstone" of the CAA's regulation of mobile emissions, *Motor*

13

*Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Env't Conservation*, 17 F.3d 521, 526 (2d Cir. 1994), and reflects how Congress has "assert[ed] federal control in this area" to avoid the "possibility of 50 different state regulatory regimes" that would raise "the spectre of an anarchic patchwork of federal and state regulatory programs," *Engine Mfrs. Ass'n v. U.S. E.P.A.*, 88 F.3d 1075, 1079 (D.C. Cir. 1996) (quotation marks omitted).

Federal law can displace state law not only through express preemption (where there is a statutory express preemption provision), but also through conflict preemption (where the state law conflicts with federal law or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (quotation marks omitted); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992). "[S]tate law that conflicts with federal law is without effect." *Id.* at 516. Plaintiffs' statutory and common-law claims run afoul of the CAA's express preemption provision and are also impliedly preempted because they conflict with EPA's enforcement of the CAA.

### (1)     The CAA Expressly Preempts Plaintiffs' Claims.

The CAA's express preemption provision set forth above—which covers any state law or claim that "relate[s] to the control of emissions"—is a "sweeping preemption provision." *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 573 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012); *see also Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 383 (1992) (observing that the term "relating to" reflects a "broad pre-emptive purpose"); *Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*, 998 F. Supp. 10, 17 (D. Mass. 1997) (Congress "intended to provide § 209(a) with a broad preemptive scope."). A court in this District has explained that "Section 209(a) does not just prohibit States from adopting emission standards that conflict with EPA standards; the provision instead bars States from adopting *or attempting to enforce any* standard within Section 209(a)'s reach," which means that "even if a State does not establish new or conflicting emission standards, its efforts to enforce new vehicle emission standards, including EPA's standards, will be prohibited." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 264 F. Supp. 3d 1040, 1050 (N.D. Cal.

14

2017) (alterations and quotation marks omitted). As a result, states cannot "adopt their own rules prohibiting [emissions control] defeat device in new vehicles, nor may they attempt to enforce EPA's rule barring defeat devices in new vehicles." *Id.* at 1052; *see also Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989) ("[E]nforcement of the Clean Air Act before the first sale of new motor vehicles is the sole and exclusive prerogative of the federal government.") (cleaned up).

Section 209 expressly preempts Plaintiffs' claims because they all hinge on allegations that Defendants violated federal standards "relating to the control of emissions." 42 U.S.C. § 7543(a). Although much of the Amended Complaint summarizes findings from the Special Investigation Committee ("SIC") report in an effort to distract from how their claims implicate federal emissions standards, the gravamen of Plaintiffs' claims is that Defendants fraudulently obtained "EPA certificates for [the] forklifts" that were "legally" required to sell the vehicles in the United States. Am. Compl. ¶¶ 99–100. The Amended Complaint alleges that TICO accomplished the purported fraud precisely through the testing and certification process that the CAA and EPA pervasively regulate: "fabricating important emissions numbers for certification testing," modifying software in the test engines, replacing certain parts during emissions testing, and "using different engines for the tests than were equipped in production-model vehicles." *Id.* ¶ 6; *see also, e.g.*, 42 U.S.C. § 7541(b); 40 C.F.R. Part 1065; 40 C.F.R. Part 1066 (EPA regulations for testing procedures). Plaintiffs also specifically allege that this conduct amounts to fraudulent concealment and means that the Class Vehicles violate federal emissions warranties. *See, e.g.*, Am. Compl. ¶¶ 147, 201–07.

Plaintiffs' theories of fraud that form the basis of all of their state-law claims will require proof that TICO in fact violated federal testing and certification requirements and that the forklifts fall short of federal emissions standards. *See, e.g.*, *id.* ¶ 147 (alleging that Defendants "committed fraud by manipulating and falsifying their engine tests and test data"). Their allegations and theories of fraud establish that all of their claims "relat[e]" to federal emissions control standards and especially to EPA's regulation of emissions testing and certification, which means the claims are preempted under Section 209. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*

15

*Prods. Liab. Litig.*, 959 F.3d 1201, 1218 (9th Cir. 2020) (state requirements that "relate[d] to the emission control system of a vehicle . . . constitute standards for purposes of § 209(a)" and were subject to preemption); *Jackson*, 770 F. Supp. 2d at 575 ("[I]t is clear that a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption."); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1024 (N.D. Cal. 2018) (dismissing express and implied warranty claims based on CAA's express preemption provision). All of Plaintiffs' claims should be dismissed for this reason.

**(2)   Plaintiffs' Claims Are Also Impliedly Preempted.**

Even if Plaintiffs' claims were not expressly preempted under Section 209 (and they are), they are still subject to "implied conflict preemption," which "serve[s] to nullify state law" that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1203 (9th Cir. 2002) (quotation marks omitted). The Supreme Court recognized in *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348 (2001), that when a "federal statutory scheme amply empowers the [federal agency] to punish and deter fraud against the [agency], and … this authority is used by the [agency] to achieve a somewhat delicate balance of statutory objectives," state-law claims may "conflict with, and are therefore impliedly pre-empted by, federal law." The Court accordingly held that state-law claims predicated on allegations that a company "made fraudulent representations" to the Food and Drug Administration ("FDA") in the "course of obtaining approval to market" a medical device were impliedly pre-empted, given the conflict between those claims and "the federal statutory scheme [that] amply empower[ed] the FDA to punish and deter fraud" against the agency in order to achieve a "delicate balance of statutory objectives." Id. at 343, 348.

Courts have extended *Buckman*'s fraud-on-the-agency holding to similar claims implicating other federal agencies, including the EPA. In *Nathan Kimmel, Inc.*, the plaintiff claimed that the defendant "knowingly and intentionally submitted false and misleading statements to the EPA" related to a product that EPA regulated under the Federal Insecticide, Fungicide, and Rodenticide Act. 275 F.3d at 1202. The Ninth Circuit held that the "rationale articulated by the Supreme Court

16

in *Buckman* applie[d] with equal force" and "compel[led] a similar result" because the plaintiff's "state law claim hinge[d] upon its contention that [the defendant] committed fraud against the EPA." *Id.* at 1205. The Sixth Circuit also recently extended *Buckman* to a fraud-on-the-EPA theory arising out of a vehicle manufacturer's alleged "cheat[ing] on fuel economy and emissions testing for certain truck models." *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 854 (6th Cir. 2023). The court held that because the Energy Policy and Conservation Act ("EPCA") and its corresponding regulations "specifically control[led] such testing," allowed EPA to "investigate suspected fraud," and gave EPA "significant discretion" to do so, the plaintiffs' theory that Ford "committed fraud in its testing" would "inevitably conflict with this regime." *Id.* at 854, 857, 862–63.[5] As a result, the court held that the plaintiffs' claims— which included breach of contract, negligent misrepresentation, breach of express warranty, fraud, and unjust enrichment—were "impliedly preempted as conflicting with federal law" since the EPCA provided "ample authority for the EPA to regulate testing, deter fraud, and publish its own fuel economy estimates." *Id.* at 858, 866–67; *cf. In re Volkswagen*, 264 F. Supp. 3d at 1054 (observing that CAA "prohibit[s] [s]tate claims predicated on deceit against EPA during new-vehicle certification").

Plaintiffs' claims are all based on a fraud-on-the-agency theory that is subject to implied preemption under *Buckman*. As explained above, Plaintiffs allege that TICO "regularly used . . . fraudulent tests and test results" to obtain "EPA certificates for its forklifts," and then allege that this same conduct constitutes fraudulent concealment (*e.g.*, "Defendants committed fraud by manipulating and falsifying their engine tests and test data for emissions . . . and attesting that the Class Vehicles complied with applicable emissions laws") and breached emissions-related warranties. Am. Compl. ¶¶ 99–100, 147, 202–04. Indeed, the Amended Complaint alleges no less than **26 times** that "Toyota" cheated on emissions testing, output tests, and otherwise engaged in various "cheating scandals" to support Plaintiffs' claims for fraud, breach of warranty, and fraud-based violations of consumer protection statutes. *See, e.g., id.* ¶¶ 1–5. Those are the exact same

---

[5] Similar to the CAA, the EPCA established a "comprehensive regulatory scheme for fuel economy testing" and allows EPA to enact regulations pursuant to this scheme, establish a testing methodology for manufacturers, and monitor compliance. 65 F.4th at 854–57.

17

types of allegations that the Sixth Circuit held were subject to implied preemption under *Buckman* given EPA's pervasive regulatory and enforcement authority in the area of fuel economy testing. *In re Ford Motor Co.*, 65 F.4th at 866–67. Plaintiffs' claims in this case therefore "inevitably conflict" with the CAA and EPA's corresponding regulatory authority, which means they are impliedly preempted and subject to dismissal. *Id.* at 860.

## VI.   CONCLUSION

TMC respectfully requests that the Court dismiss the claims asserted against TMC in Plaintiffs' Amended Complaint without leave to amend. *See Reddy v. Litton*, 912 F.2d 291, 296 (9th Cir. 1990) (leave to amend need not be granted when further amendment would be futile).

DATED: October 16, 2025                    KING & SPALDING LLP


By:  */s/ Alexandra Kennedy-Breit*
     Alexandra Kennedy-Breit
     KING & SPALDING LLP
     633 West Fifth Street, Suite 1600
     Los Angeles, CA 90071
     Telephone: 213.443.4355
     akennedy-breit@kslaw.com

     John P. Hooper (pro hac vice)
     Jacqueline Seidel (pro hac vice)
     KING & SPALDING LLP
     1185 Avenue of the Americas
     New York, NY 10036
     Telephone: 212.556.2100
     jhooper@kslaw.com
     jseidel@kslaw.com

     Attorneys for Defendant
     TOYOTA MOTOR CORPORATION

18