UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BROADMOOR LUMBER & PLYWOOD CO., et al.,

Plaintiffs,

v.

TOYOTA INDUSTRIES CORPORATION, et al.,

Defendants.

Case No. 3:24-cv-06640-JSC

**ORDER RE: MOTION FOR PRELIMINARY APPROVAL**

Re: Dkt. No. 84

Plaintiffs filed this putative class action alleging Defendants Toyota Industries Corporation, Toyota Material Handling, Inc., and Toyota Material Handling, N.A. engaged in a pattern of misconduct in the design, development, and testing of gasoline and diesel-powered forklifts and their engines. The parties have reached a class action settlement and now seek preliminary approval of the settlement. (Dkt. No. 84.) Having considered the parties' submissions, including the revised notice, and having had the benefit of oral argument on February 26, 2026, the Court GRANTS preliminary approval of the class action settlement.

## BACKGROUND

The Court assumes the parties' familiarity with the procedural history of this action and incorporates Plaintiffs' discussion of it by reference. (Dkt. No. 84 at 9-12.)

## THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The Agreement defines the Settlement Class as: "All persons or entities that purchased a Settlement Class Vehicle, or leased a Settlement Class Vehicle, through the date of filing of the Motion for Preliminary Approval." (Dkt. No. 84-1, Settlement Agreement at ¶ 2.40.)

**B.    Payment Terms**

Under the Settlement Agreement, Defendant will pay $299.5 million ("Settlement Cash Value"). (*Id*. at ¶ 2.35.) From this amount, Plaintiffs will seek the following distributions:

1) Attorneys' fees of up to 25 percent ($74,875,000) of the Settlement Cash Value (Dkt. No. 84-1 at ¶ 31);

2) Litigation Expenses of up to $500,000 (*Id*.);

3) Service awards of $2,500 for each of the proposed Settlement Class Representatives (for a total of $50,000) (*Id.*); and

4) Settlement administration costs of no more than $895,000 (Dkt. No. 84-3 at ¶ 44).

The remaining Net Settlement Amount will be divided between Settlement Class Members on a per-capita basis. (Dkt. No. 84-1 at ¶¶ 2.34, 2.35, 4.1.) If more than one Settlement Class Member submits a valid claim for the same forklift, the original owner will receive 60 percent of the funds for that forklift, and the remaining 40 percent will be distributed evenly among the other valid claimants. (*Id*. at ¶ 4.1.)

**C. Injunctive Relief**

In addition to the monetary settlement, the Settlement Agreement includes injunctive relief. In particular, all Settlement Class Forklifts in operation will be eligible for a free Service Plan visit, which includes a manufacturer-recommended inspection and, where appropriate, basic services for all major systems of the Settlement Class Forklifts, as well as a free oil change or a transmission fluid change, at the discretion of the Settlement Class member. (Dkt. No. 84-1 at 50, Settlement Agreement, Ex. B.) The estimated value of the Service Plan is between $83,725,600 to $189,306,400. (Dkt. No. 84-2 at ¶ 4.) Further, if the government requires or recommends an emissions recall for the Settlement Class Vehicles anytime in the next three years, the Settlement requires Defendants to provide impacted Settlement Class Members a New Parts Warranty with additional coverage for parts affected by that recall. (Dkt. No. 84-1 at ¶ 4.3.)

**C.    Scope of Release**

Settlement Class Members who do not opt-out will release Defendants from any and all claims that:

1) arise out of or in any way relate to the purchase, lease, use,

2

service, repair, or maintenance of any of the Settlement Class Vehicles, and also

    2) relate in any way to

        a. certification testing, emissions, or related impacts on output, horsepower, and performance;

        b. any of the alleged violations of the Clean Air Act, federal regulations, or state laws or regulations cited in the Complaint in this Action;

        c. any of the marketing representations identified in the Complaint filed in this Action, including but not limited to the failure to disclose any information about certification testing, emissions, or related impacts on output, horsepower, and performance;

        d. any acts or omissions that were raised or could have been raised within the scope of the facts asserted in the Complaint filed in the Action; or

        e. any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), or (d) of this paragraph.

(*Id.* at ¶ 2.27.)  The Settlement Class Representatives also expressly release all claims on behalf of themselves and the Settlement Class under California Civil Code Section 1542.  (*Id.* at ¶ 11.5.)

### D.   Notice

Plaintiffs have selected Verita as the Settlement Administrator.  Verita will provide notice by 1) direct notice via mail and/or email, to the extent practicable; (2) supplemental digital notice through the industry-related news platform ForkliftAction.com and social media platforms; (3) publication notice in leading trade publications; (4) an internet search campaign; (5) a press release; (6) a Settlement Website, www.ForkliftSettlement.com; and (7) a settlement toll-free phone number, post office box, and email address.  (Dkt. No. 84-3 at ¶ 20.)

### E.   Opt-Outs and Objections

Class members will have 90 days from the date of notice to request exclusion (opt-out) or object to the settlement.

### DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the

class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## I.    CLASS CERTIFICATION

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23.

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous. The Settlement Class consists of owners and lessees of 272,422 Settlement Class Forklifts.

Second, the typicality requirement is satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up). Here, the Settlement Class Representatives' claims and those of the members of the proposed Settlement Class are based on the same legal theory and they are alleged to have suffered

4

United States District Court
Northern District of California

the same injuries in paying more for Settlement Class Forklifts than they otherwise would have.

Third, the commonality requirement is satisfied because there are common questions of law and fact that relate to Defendants' alleged manipulation of emissions tests for the Settlement Class Forklifts and related misrepresentations to regulators and consumers. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B.*, 30 F.4th at 839 (cleaned up).

Finally, the adequacy of representation requirement is met as to both the Class Representatives and Class Counsel. Adequacy of representation requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (cleaned up). There is no apparent conflict between the Class Representatives and class members, and the Class Representatives and Class Counsel have vigorously pursued this action on behalf of the class.

### B.      Rule 23(b)(3)

As previously discussed, Rule 23(b)(3) requires a plaintiff to establish the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following nonexhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### 1.    Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id*. (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (quotations omitted).

Here, the common questions raised by Plaintiffs' claims predominate over any individual questions because a common course of conduct—alleged fraud in engine tests and resulting misrepresentations to consumers—is central to Plaintiffs' claims. "Plaintiffs allege a common course of conduct— manipulation of emissions and [] test results—that applies to all Class Members and is central to their claims." *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *4 (N.D. Cal. Nov. 9, 2022); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 536661, at *7 (N.D. Cal. Feb. 11, 2019) (common facts and injuries arose "from [defendants'] use of the [emissions cheat]"). Commons questions for all Settlement Class members include "what misconduct [Defendants] engaged in, if any, during engine testing; what [Defendants'] executives knew about the alleged misconduct in its emissions tests and when; whether representations about the Class Forklifts' emissions performance were misleading to reasonable customers; and whether [Defendants'] actions were fraudulent." (Dkt. No. 84 at 19.)

### 2.    Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the

United States District Court
Northern District of California

difficulties likely to be encountered in the management of a class action. *Id*. The Court concludes a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. In particular,

> [i]f Class Members were to bring individual lawsuits against [Defendants], each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence. Given that Class Members number in the ... thousands, there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results. Thus, classwide resolution of their claims is clearly favored over other means of adjudication, and the proposed Settlement resolves Class Members' claims at once.

*Volkswagen*, 2017 WL 672820, at *8. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

In sum, the predominance and superiority requirements of Rule 23(b)(3) are met.

\* \* \*

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II.     PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

United States District Court
Northern District of California

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A.    Whether the Settlement is Fair, Adequate, and Reasonable

#### 1.    Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have

United States District Court
Northern District of California

"an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

The settlement was reached on a fully developed record after extensive investigation and discovery by a team of attorneys experienced in vehicle emissions review.  (Dkt. No. 84-1 at ¶¶ 5-13.)  The case was also actively litigated with motions to dismiss filed by Defendant Toyota Motor Company and Defendant Toyota Material Handling Inc.   While these motions were pending, the parties attended a mediation with Honorable Layn R. Phillips (ret.), which resulted in a tentative settlement that was finalized over the ensuing months following additional discovery.  (*Id*. at ¶¶ 14-15.)

The settlement thus appears the product of serious, informed, non-collusive negotiations. This factor weighs in favor of approval.

### 2.    Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

The only preferential treatment is the $5,000 service awards Plaintiffs intend to seek for the Class Representatives. Such "[i]ncentive awards are fairly typical in class action cases ... to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). The Court will defer ruling on the appropriateness of the amount requested until final approval. At this stage, there is no indication the service awards in general constitute "preferential treatment" such that it would defeat preliminary approval.

### 3.    Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *8 (N.D. Cal. Nov.

21, 2018). This requires the Court to evaluate the strength of Plaintiffs' case.

The Settlement Agreement provides for a $299.5 million cash fund and a Service Plan worth an additional $136.5 million to compensate Settlement Class members for alleged overpayment of the Settlement Class Forklifts affected by the Defendants' alleged emissions and testing misconduct. (Dkt. No. 84 at 23.)  Class counsel estimates that based on reasonable claims-rate projections this would yield individual payments ranging from approximately $1,400 (60% claim rate) to $2,800 (30% claim rate) for each eligible forklift, which is between 5.5% and 11% of the Class Forklifts' average sales price. (Dkt. No. 84-1 at ¶ 20.)  If the Court were to approve all of the requested fees and costs and a valid claim was submitted for every Settlement Class Forklift, each forklift would be allocated approximately $820.  (*Id.*)  Class counsel contends this recovery is "comparable to or exceeds other emissions cheating settlements."  (*Id.* (citing *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019) (final settlement providing for a maximum of $3,075 per vehicle, reflecting an emissions violation premium of about 5% of the average vehicle purchase price); *Express Freight Int'l v. Hino Motors Ltd.*, No. 22-cv-22483-DPG (S.D. Fl.) (final settlement yielding payments of $2,100 per vehicle—roughly 3% of the vehicles' average purchase price)).)

In evaluating the reasonableness of this recovery, the Court considers the risks of continued litigation.  At the time the settlement was reached, the pending motions to dismiss raised issues regarding preemption under the Clean Air Act and lack of Article III standing.  If Plaintiffs prevailed on these motions, Plaintiffs still faced significant challenges with class certification, dispositive motions, trial, and possible appeal, all of which could take years to resolve.  The risks and costs of continued litigation balanced against the relief here warrant preliminary approval and comment from class members.

### 4.    Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. This factor weighs in Plaintiffs' favor as no obvious deficiencies exist on the face of the settlement agreement.

* * *

10

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

### III.    CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

As discussed above, Plaintiffs propose three categories of notice: (1) direct notice through mail and/or email, (2) online advertising in several platforms, and (3) publication notice.  Plaintiffs and the Settlement Administrator Verita have prepared a long-form notice, postcard notice, and a variety of advertisements/postings to publicize the settlement.  (Dkt. No. 84-3.)  At the preliminary approval hearing, the Court raised concerns regarding the long-form notice. (Dkt. No. 89.)  Plaintiffs have since filed a revised long-form notice which complies with Rule 23(c). (Dkt. No. 90-1 (redlined version); Dkt. No. 90-2 (clean version).) The short form notices clearly and concisely provide an overview of the lawsuit and the claims process and provide clear instructions for how to obtain more information and file a claim. (Dkt. No. 84-3 at 32-43.)  The revised long-form notice describes the allegations and claims in plain language, explains who is a class member, includes contact information for Class Counsel and the Settlement Administrator, summarizes the settlement including the cash amount and service plan, provides a range of possible recovery, and directs class members to a website, email, and toll-free number for

United States District Court
Northern District of California

11

additional information. (Dkt. No. 90-2.)  The revised long-form notice also adequately describes the options available to class members, including instructions for requesting exclusion from the settlement and filing an objection, and the information necessary to submit a claim. It also indicates how Class Members can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to oppose class counsel's fee motion"). Finally, it informs class members they may appear at the final fairness hearing with or without an attorney.

## IV.    ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation

United States District Court
Northern District of California

12

omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement is silent as to the amount of Plaintiffs' request for attorneys' fees; it just provides "On or before the date that Settlement Class Counsel files the Motion for Final Approval, Settlement Class Counsel shall file a Motion for Attorneys' Fees for work performed in connection with the Action pursuant to Rules 23(h) and 54(d)(2). Defendants reserve the right to oppose Settlement Class Counsel's motion." (Dkt. No. 84-1, Settlement Agreement at ¶ 14.2.) The motion for preliminary approval states Plaintiffs anticipate seeking $500,000 in costs and $74,875,000 million in fees, amounting to 25 percent of the Settlement Cash Value. (Dkt. No. 84 at 14.)

Plaintiffs shall submit a motion for attorneys' fees, including declarations and detailed billing records, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice). Class Counsel shall also submit detailed information in support of their request for $500,000 in costs.

## CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

13

United States District Court
Northern District of California

1. This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following Settlement Class:

> All persons or entities that purchased a Settlement Class Vehicle, or leased a Settlement Class Vehicle, through the date of filing of the Motion for Preliminary Approval.

Those excluded from the Class are: (a) Defendants' officers, directors, and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' authorized dealers and distributors and their officers, directors, and employees; (b) Released Parties; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) all those otherwise in the Settlement Class who or which timely and properly exclude themselves from the Settlement Class as provided in this Class Action Agreement.

2. The Court appoints as Settlement Class Counsel David Stellings and Kevin Budner of Lieff Cabraser Heimann & Bernstein, LLP, and Roland Tellis of Baron & Budd P.C.

3. The Court appoints Plaintiffs as Settlement Class Representatives to represent the Settlement Class.

4. The Court appoints Citibank, N.A., as the escrow agent to maintain the Settlement Fund, which the Court establishes as a "qualified settlement fund" within the meaning of Treasury Regulation 1.468B-1.

5. The Court appoints Verita Global, LLC as the Settlement Administrator, and approves the payment of reasonable administration costs to the Settlement Administrator from the proceeds of the Settlement, not to exceed $895,000 without further Court order prior to the Effective Date.

6. Plaintiffs shall file copies of the notices and claim form within 10 days of dissemination of notice.

7. Plaintiffs shall file their Motion for Final Approval by April 30, 2026. The motion shall include the information suggested by the Northern District of California Procedural Guidance for Class Action Settlements.  By this same date, Class Counsel shall file their motion for attorneys' fees, costs, and service awards for the Class Representatives, and all supporting documentation

and papers.

8. Any objections or opt-outs are due by June 1, 2026.

9. Plaintiffs' reply memoranda in support of final approval and fee/expense application shall be filed by June 11, 2026.

10. The parties shall appear before this Court for a final approval hearing on July 9, 2026 at 2:30 p.m. in Courtroom 8, 450 Golden Gate Ave., San Francisco, California.

This Order disposes of Docket No. 84.

**IT IS SO ORDERED.**

Dated: February 26, 2026

JACQUELINE SCOTT CORLEY
United States District Judge